## 29315. FLOYD v. THE STATE.

INGRAM, Justice.

This case is here on an appeal filed by counsel for the accused after a motion for new trial was overruled in the trial court and for mandatory review of death sentences imposed upon the accused following his conviction by a jury on two counts of murder and one count of armed robbery in Fulton County. We affirm the convictions and the death sentence imposed for each of the murder offenses but reverse the death sentence imposed for the armed robbery.

### I.

#### Issues.

The accused presents four issues for decision in this appeal and review of the case. It is first contended that the death sentences imposed in the trial court were given under the influence of passion and prejudice caused by the introduction into evidence of three photographs identified as state's Exhibits 15, 16 and 17, and that the death sentences are excessive and disproportionate to penalties imposed in similar cases. The accused also contends that the evidence is insufficient to support the jury's findings that the offense of robbery was outrageously vile and horrible and that it involved torture to the victims. Finally, the accused contends that provisions of the Georgia Death Penalty Statute (Code Ann. §§ 27-2534.1 and 27-2537) are violative of State and Federal Constitutions and contrary to Furman v. Georgia, 408 U. S. 238 (97 SC 2726, 33 LE2d 346) (1972).

## II.
## Sufficiency of the Evidence.

The prosecution presented evidence of the following: Mrs. Lenora Martin and her 17-year-old daughter Ginger Martin, died of gunshot wounds in East Point, Fulton County, Georgia, on December 12, 1973. Candy Martin, a younger Martin child, arrived home from school shortly after 3 p. m. on December 12, 1973. Finding the back door of her family's home slightly open, she went inside and called her mother and sister. Receiving no response, she continued to look for them. In the downstairs den she noticed the telephone was off the hook. In her bedroom she found her mother and sister lying with their hands and feet bound. When they would not answer, she went to a neighbor for help.

When police officers summoned by the neighbor arrived, they found the mother and older daughter dead, apparently shot in the head. The daughter's body was lying face down on the bed with a belt tied around her neck and her wrists and ankles were bound. Mrs. Martin's body was on the floor beside the bed and her wrists and ankles were bound with a telephone cord. The safe in the den was open and empty. Medical evidence indicated both women died of gunshot wounds to the neck and head.

On the morning of December 12, 1973, the accused, Gary Michael Floyd, and Eugene Newsome, with whom the accused lived, went to the home of Frank James Walker in Morrow, Georgia, to take him to a construction job. They were driving a rented Ford Torino automobile. The three men went by a construction site and then to a private residence. Newsome said he was going to use the telephone and got out and went to the door. A lady came to the door and allowed him to enter. Shortly thereafter, Walker and the accused went inside the house. Newsome was on the phone. When he hung up the phone, both Newsome and the accused drew guns. Newsome went upstairs, got Ginger Martin, and brought her downstairs. Newsome, the accused and the two women then sat down and started talking about money. The accused threatened to cut off the daughter's fingers if Mrs. Martin would not reveal the location of the money.

The accused was next seen with two metal money boxes, a green one and a gray one, which he placed on the kitchen table. The accused then took Mrs. Martin upstairs. Newsome got the money boxes and took them to the car and returned to the house and gave the accused directions to shoot the women. Newsome then left the Martin house and returned to the car. At this point, the accused began walking up and down the stairs shaking his head and acting "like he was going crazy or something." Walker, who was standing at the kitchen door, heard a shot a short time later. He ran to the car where Newsome was sitting behind the steering wheel, and heard three more shots. Thereafter, the accused came out of the house and joined them in the car.

The accused and Newsome began talking about the killings. The accused told Newsome that he "guessed" he had killed the women as he had shot each of them twice in the head. He then related how Mrs. Martin had thrown up her hand right before he shot her in a futile attempt to ward off the bullet. "Ain't this a bitch," said Newsome, and both men laughed. The accused also told Newsome how he had kissed the daughter, Ginger Martin, on the forehead before shooting her. The trio then returned the Torino rental car and drove in another vehicle to a wooded area near Ellenwood, Georgia, where they proceeded to split the money. Approximately $4,400 was missing from the safe, including "Barr" dollar bills. The accused then went to California under an assumed name where he was eventually arrested and extradited to Georgia for trial. The accused told his cousin, Ronald Neal, that he had done the killing because Newsome had "chickened out." Neal was apprehended for trying to pass some of the rare "Barr" dollars for the accused.

At the trial, the accused elected to testify under oath in his defense. He testified that Newsome asked him if he would help rob Martin's house but that he refused to do so. He admitted he was with Newsome earlier on the day of the crimes but denied participating in the commission of the crimes or being with Newsome during the robbery and murders and testified he did not again see Newsome until later that day, around 2 p. m., after the crimes had been committed. The accused also

testified that he left town at Newsome's direction after Neal was caught trying to pass some of the "Barr" dollars. The evidence is sufficient to support the convictions of all three offenses.

## III.
### Admissibility of Photographs.

The accused argues that the admission of three photographs identified as state's Exhibits 15, 16 and 17 created passion and prejudice against him causing imposition of the death sentences by the jury. However, it appears that the exhibits referred to in this contention are not Exhibits 15, 16 and 17, which are photographs of a blood stained carpet that were not admitted in evidence, but actually are state's Exhibits 7 and 10, which are photographs of the daughter, Ginger Martin, taken from different angles.

Whether the death sentences were imposed under the influence of passion and prejudice will be considered in our subsequent sentence review in this case. The photographs were admissible and the trial court did not err in receiving them into evidence. There is abundant case authority that photographs showing an accurate and correct representation of a person or an object material to the issues in the case are admissible. The location of wounds is material to the issues in a homicide case, and photographs should not be excluded simply because there is other evidence of the location of the wounds. To rule otherwise would unfairly preclude the state from establishing a material fact by more than one source of evidence. See *Johnson v. State,* 226 Ga. 511 (2) (175 SE2d 840); *Henderson v. State,* 227 Ga. 68 (5) (179 SE2d 76); *Sirmans v. State,* 229 Ga. 743 (1) (194 SE2d 476); *Coffee v. State,* 230 Ga. 123 (5) (195 SE2d 897); *Allen v. State,* 231 Ga. 17 (5) (200 SE2d 106).

Relevant photographs are admissible to describe a person, place or thing, for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case. See *Jackson v. State,* 225 Ga. 39, 47 (165 SE2d 711) (1969), cert. den., 399 U. S. 934 (90 SC 2248, 26 LE2d 805) (1970); *Cash v. State,* 224 Ga. 798 (2) (164 SE2d 558) (1968).

## IV.

### Constitutionality of the Death Penalty Statute.

The accused also argues that Code Ann. §§ 27-2534.1 and 27-2537 are unconstitutional under the Constitutions of the United States and the State of Georgia and cannot be sustained under the decision of the U. S. Supreme Court in Furman v. Georgia, 408 U. S. 238, supra. All of these contentions by the accused have been considered and rejected in other decisions of this court. The constitutionality of the Georgia Death Penalty Statute has been upheld in *Coley v. State,* 231 Ga. 829 (1) (204 SE2d 612); *House v. State,* 232 Ga. 140 (3) (205 SE2d 217); and *Eberheart v. State,* 232 Ga. 247 (1) (206 SE2d 12). We adhere to our previous judgment on these constitutional issues and affirm the constitutionality of the 1973 death penalty statute in this case.

## V.

### Sentence Review.

The death penalties imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1 to authorize affirmance. This court must determine whether the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and, whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c, 1-3).

We have reviewed the trial transcript and record and have made a comparison of the evidence and sentences in similar cases pursuant to the mandate of the statute. The cases considered by the court in this review are listed in an appendix attached to this opinion. Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in this case were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty as to all three counts of the indictment, the jury found as follows: that the offenses of murder (Counts I and II) were committed while the accused was engaged in the commission of

another capital felony, to wit, armed robbery. Code Ann. § 27-2534.1 (b, 2). The jury also found that the armed robbery was outrageously vile and horrible in that it involved torture of the victim. Code Ann. § 27-2534.1 (b, 7). The evidence supports the jury's findings of statutory aggravating circumstances as to both counts of murder. After considering both the crimes and the defendant and after comparing the evidence and sentences in this case with those of previous murder cases reviewed, we are of the opinion that the sentences of death for the two offenses of murder are not excessive or disproportionate to the penalties imposed in similar cases.

However, the death sentence imposed for the armed robbery offense cannot be sustained. There is no indication that this sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, but we find the death sentence has rarely been imposed for the offense of armed robbery. Thus, under the test provided by statute for comparison (Code Ann. § 27-2537 (c, 3)), it must be considered to be excessive or disproportionate to the penalties imposed in similar cases.

## VI.
### Conclusion.

The sentence of death for the offense of armed robbery must be set aside and the case remanded for resentencing by the trial judge on Count III of the indictment, based upon the record and argument of counsel. Code Ann. § 27-2537 (c, 2). The two death sentences for the offenses of murder (Counts I and II of the indictment) are affirmed. Prior applications of this sentencing procedure can be found in *Coley v. State,* 231 Ga. 829, supra; *House v. State,* 232 Ga. 140, supra; *Eberheart v. State,* 232 Ga. 247, supra; and, *Gregg v. State,* 233 Ga. 117.

*Judgment affirmed in part; reversed in part, with direction. All the Justices concur, except Gunter, J., who dissents.*

ARGUED OCTOBER 17, 1974 — DECIDED NOVEMBER 26, 1974.

*Williamson & Kermish, Stephen A. Kermish, O. H. Williamson,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Deputy Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *Henderson, v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Allen v. State,* 231 Ga. 17 (200 SE2d 106); *Smith v. State,* 230 Ga. 876 (199 SE2d 793); *Johnson v. State,* 231 Ga. 138 (200 SE2d 734); *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445); *Gregg v. State,* 233 Ga. 117.