### 32605. SPRAGGINS v. THE STATE.

HILL, Justice.

This is a death case. The defendant Eddie Spraggins, along with Freddie Davis,[1] was indicted in Meriwether County for the January 31, 1977, rape and murder of Miss Frances Coe. After a special jury found the defendant sane at time of trial, he was tried and found guilty on March 1 and 2, 1977, on both counts. Upon the jury's finding of a statutory aggravating circumstance to the murder charge, that the murder was committed while the offender was engaged in the rape, the defendant was sentenced to death for murder and life imprisonment for rape.

Evidence was presented from which the trial jury was authorized to find the following: On the afternoon of January 31, 1977, the semi-nude body of Frances Coe, age about 55, was found in her home in Manchester, Georgia. She had been repeatedly stabbed, slashed and cut, including having her throat cut. There were several wounds to the body which caused the victim to bleed heavily, with the most severe stab wounds being in the upper abdomen and lower chest, including two in the upper abdomen which penetrated the heart. She had been partially disembowelled. Death was attributed to a loss of blood.

The victim was found lying partially on her bed. Her sweater was open, her slip had been pulled up and her pantyhose and panties had been pulled down. There was testimony that there had been manipulation of the victim's sexual organs. There were bruises on her thigh and in the vicinity of the vaginal opening. There was hemorrhaging around the urethra and a small tear in the vaginal orifice. Doctor Byron Dawson who performed the

---

[1] See *Davis v. State,* 240 Ga. 763 (1978).

autopsy testified that although no sperm cells were found, in his opinion the injuries he described were consistent with those associated with sexual relations.

The defendant and the victim were neighbors. The night of the murder the defendant was seen burning something in his back yard. A zipper and cloth material and a flashlight of the type owned by the victim were recovered from the ashes.

When told that there was a warrant out for his arrest, the defendant stated that there was nothing to it, that he had hit somebody but that he did not get any money out of her.

In a pre-trial statement to a GBI agent (following appropriate advice concerning his rights) the 34-year-old defendant was quoted as follows: "On Sunday night, the 30th of January, 1977, Freddie Davis and I went to Frances Coe's house. We had been talking about robbing Frances Coe for a long time. We stopped at the back of the house, and I told Freddie to stay at the back and I went to the front, knocked on the door and Frances Coe let me in. I told her I wanted to use the telephone. I told her to open the back door and let Freddie in. I hit her and she started screaming. I got her around the neck and held her while I opened the back door. Freddie came in. I pulled her back into the bedroom. I had my hand over her mouth to keep her from hollering. Freddie said, 'Shut her up,' and handed me his knife, and I opened the knife and stabbed her and cut her throat. She just would not die and I just kept cutting. Freddie said, 'You got to finish her off.' I wiped the blood off my hands on a towel. I gave the knife back to Freddie. Freddie got her flashlight looking for money. After we left, he gave me the light. I burned it and a blue windbreaker behind my house."

The defendant presented two witnesses in addition to his own testimony. One witness testified that the defendant had worked for her husband but that he could only perform small uncomplicated menial tasks helping her husband do odd jobs around the house. She said that he could not count change for a dollar, and that she did not think he could read or write. The defendant's sister testified that he could never learn in school and always had mental problems and they sought help for him in a

number of different places.

The defendant testified that he did not remember going to Frances Coe's house; that he drank heavily; that he did not rape her, nor had he ever raped anyone; that he could not read; and that he had never told law enforcement officers that he had participated in her killing.

On cross examination the defendant admitted he had burned several coats and "I might have did burn the flashlight too." He admitted that when he was arrested he was in the trunk of Buddy Mullis' automobile, and stated that he was not exactly hiding and that he found it comfortable in the trunk because it was a good place where he could lie down and rest when he wanted to be by himself.

On appeal the defendant enumerates two errors.

1. In the defendant's first enumeration he asserts that the trial court erred in denying his motion for new trial based on the general grounds. The evidence as to murder is more than adequate. In view of the death of the victim there is, however, no direct evidence as to the rape. Specifically, the evidence as to the second element of carnal knowledge, Code § 26-2001, is circumstantial at most. Considering all the facts and circumstances, however, we find that there was sufficient evidence regarding rape to support the jury's verdict. *Harris v. State,* 236 Ga. 242 (1) (223 SE2d 643) (1976). It was not error to overrule the motion for new trial based on the general grounds.

2. In Enumeration 2 defendant asserts that the trial court erred in denying his motion for mistrial when a GBI agent voluntarily testified as to the defendant's character.

While the officer was testifying for the state the district attorney asked him: "Q. Now, based on the evidence that you gathered in your investigation, you confronted the defendant Eddie Spraggins, is that correct?" The officer deviated, saying: "A. Not at this time. We continued to gather other things. Eddie Spraggins was known to have been drinking the night before and in this area. I did a little background work on Eddie Spraggins from the police department and learned that he

was the type person, you know, who got into fights. They had a bit of trouble with him periodically. In addition to this, just prior to —" The district attorney interrupted asking: "Q. But, you did eventually go to him, is that correct?" The officer answered: "A. Oh, yes sir. I did eventually go to him. I was just telling you the background, what led me to him." The district attorney next asked the officer if he had had a conversation with the defendant.

Thereafter the jury was excused and a Jackson-Denno hearing was held. At its conclusion, defendant's counsel moved for a mistrial because the officer had injected the defendant's bad character into evidence. The court overruled the motion for mistrial but on return of the jury the trial court instructed the jury as follows: "The court instructs you to disregard anything that might have been said pertaining to this defendant in regard to any drinking or any fighting or any conflicts, any trouble he might have been in with the Manchester Police Department, because that has no bearing on this case whatsoever. The purpose of this case is to determine whether or not this defendant did commit the crime for which he is charged. The state has the burden of proving that and not anything other than that shall be considered in the trial of this case."

We do not find that the officer's improper comments in the presence of the jury were so prejudicial that the curative instructions by the court were ineffective. The trial court did not abuse its discretion in refusing to grant the motion for mistrial. *Googe v. State,* 237 Ga. 175 (1) (227 SE2d 51) (1976); *Lynch v. State,* 234 Ga. 446, 448 (216 SE2d 307) (1975); *Woods v. State,* 233 Ga. 495, 497-498 (212 SE2d 322) (1975); *Wingfield v. State,* 231 Ga. 92 (8) (200 SE2d 708) (1973); Code Ann. § 38-202.

3. *Sentence review.* After finding the defendant guilty of murder and rape at the guilt-innocence phase of the trial, at the sentencing phase the jury found that the offense of murder was committed while the offender was engaged in the commission of another capital felony, the rape, and imposed the death penalty. This was the only aggravating circumstance as to which the defendant had been put on notice. Code Ann. § 27-2503. Cf. Code Ann. §

27-2534.1 (b) (2), (4) and (7).

We first consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Code Ann. § 27-2537 (c) (1).

The court's sentencing instructions failed to make clear to the jury that they could recommend a life sentence even if they found the existence of a statutory aggravating circumstance (*Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1977)), and failed to inform the jury that they were authorized to consider mitigating circumstances in contravention of requirements laid down in Code Ann. §§ 27-2534.1 (b) and 27-2534.1 (c), *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1977). The jury instructions in the case before us failed to comply with the requirements of *Fleming* and *Hawes* and thus the death penalty must be set aside and a new sentencing trial allowed.

*Judgment affirmed as to the convictions; reversed as to the death sentence for murder. All the Justices concur, except Jordan, J., who dissents from the reversal of the death sentence.*

ARGUED SEPTEMBER 19, 1977 — DECIDED FEBRUARY 21, 1978.

*A. Vernon Belcher,* for appellant.

*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

JORDAN, Justice, dissenting.

I dissent to the reversal of the death penalty for the reasons set forth in my dissent in *Redd v. State,* 240 Ga. 753 (1978).