## 33000. LAMB v. THE STATE.

PER CURIAM.

Randall Ray Lamb was convicted of murder, sentenced to death and appeals.

On February 5, 1976, the appellant along with a male friend drank several beers, then went to a club in Atlanta, had another beer or two and then came back home and began to watch television. As he was watching the police drama, Barnaby Jones, he had a certain urge "to get his gun and blow somebody away." He took a .410 gauge shotgun from his closet, got some shells and went to the nearby home of Mrs. Sylvia Yancey. Looking through a window he saw her lying on the couch, raised his gun and fired it at her head. After he fired the gun, the appellant broke the window and went in the side door. As Mrs. Yancey attempted to get up from the couch, the appellant took the butt of the gun and hit her over the head several times, causing a fracture of the skull and exposure of the brain. When it seemed like she was still breathing, the appellant went to the kitchen, grabbed a couple of knives and made twenty-two stab wounds in her body. He then picked her up by her feet and threw her on the floor.

A subsequent autopsy revealed that Mrs. Yancey had suffered a shotgun wound to the top of her head, twenty-two stab wounds primarily on the left side of her body, and blunt force injury to the left side and back of her head. Medical testimony was that death resulted from a combination of blunt force injuries and the stab wounds; that the shotgun blast was not the immediate cause of death but would have eventually caused death if the other injuries had not intervened.

Mrs. Yancey's seventeen-year-old daughter, Shelley, who lived in the home with her, returned home about 10:30 p.m. that night and upon entering the home found her mother's body. Just at that time she received a telephone call from the appellant Lamb, who was a neighbor and friend. She advised him that something terrible had happened and that he must hang up so she could call the police. After she called the police the appellant called again and asked her if she wished him to

come to the house. She replied that she did and the appellant immediately came to the scene. He checked Mrs. Yancey's pulse, ascertained that she was dead, and waited with Shelley until the police arrived. He appeared calm and did most of the talking to the police since Shelley was almost hysterical. The appellant remarked to the police that this was the most horrible crime he had ever seen and that a person who would do such a thing should be "burnt." After taking a routine statement from the appellant and other neighbors, a police detective noticed a discrepancy in the timing of his call to Shelley and Shelley's call to the police. This and other discrepancies eventually caused the police to focus on the appellant as a suspect.

It was discovered that Lamb had access to a .410 gauge shotgun and had indeed attempted to pawn it to a neighbor on the very day of the murder. After being fully advised of his rights Lamb confessed that he killed Mrs. Yancey. He led the officers to where he discarded the shotgun. The bloodstained gloves that the appellant wore and a spent shell casing were also recovered from his home. The appellant was 20 years of age at the time.

The appellant did not present any evidence at the guilt phase of the trial. His defense was insanity, premised essentially on the contention that there was no motive for the crime and that a sane, rational person would not perform such an act. The only possible motive disclosed by the record was Shelley's testimony that the appellant frequently called her on the telephone at 2 and 3 o'clock in the morning; that her mother objected to these calls; and that she had communicated her mother's displeasure to the appellant.

During the sentencing phase of the trial, the appellant presented several character witnesses.

1. During the voir dire examination the district attorney stated to prospective jurors that the state expected to introduce demonstrative evidence that the victim was shot, beaten and stabbed and inquired if this aggravated situation would cause any reluctance on the part of any of them to serve as a juror. No jurors were excused for this reason and the appellant assigns error on the basis that the statement was prejudicial to him.

In all criminal cases "both the state and the defendant shall have the right to an individual examination of each juror from which the jury is to be selected prior to interposing a challenge. . . In such examination the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the cause, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning or bias which the juror might have respecting the subject matter of the suit, or counsel or parties thereto, and religious, social and fraternal connections of the juror." Code Ann. § 59-705.

We note that also during the voir dire examination the appellant's counsel questioned jurors as to whether or not any of them had ever been the victim of a crime, had their house burglarized, or ever had anything stolen from them, or anything of that nature.

These inquiries by the district attorney and defense counsel were professionally advanced and appear to be nothing more than an attempt to establish a basis for the intelligent exercise of peremptory challenges during the jury selection. There is no indication of any effort to prejudice or inflame the passions of the jurors by either the district attorney or counsel for the appellant. Both the fact that a juror does not want to serve because of the nature of the offense and the fact that he has been the victim of a crime could arguably be taken as a "fact or circumstance indicating any information, leaning or bias which the juror might have respecting the subject matter of the suit."

The control of the voir dire examination is vested in the sound legal discretion of the trial judge and will not be interfered with by this court unless the record clearly shows an abuse of that discretion. We find no such abuse here. *Pierce v. State,* 231 Ga. 731 (204 SE2d 159) (1974).

2. The appellant enumerates error on the court allowing into evidence three photographs of the deceased, contending that the sole purpose of the photographs was

to inflame the minds of the jurors and prejudice them against the defendant.

The photographs were made during the autopsy and depict the extent and nature of the wounds suffered by the victim. The location of wounds is material to the issues in a homicide case and the trial court did not err in admitting them though there was other evidence from the examining physician as to the nature and location of the wounds. *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974); *Allen v. State,* 231 Ga. 17 (5) (200 SE2d 106) (1973).

3. The court charged "I charge you that every person is presumed to be of sound mind and discretion, but the presumption may be rebutted." The appellant contends this was error in that it deprived him of his entitlement to a presumption of innocence, that it excused the state from its burden of proving guilt beyond a reasonable doubt, that it afforded the state a presumption to which it was not entitled, that it denied the defendant his rights of due process, and that the charge was incomplete.

The appellant requested the following charge: "Ladies and Gentlemen of the jury, I charge you that in every criminal case the presumption is that the defendant was sane at the time of the commission of the crime, and the burden of proof rests upon him to show to the contrary. He must show that, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury."

The charge as given included the presumption but was silent as to who had the burden on the question of sanity. The general charge included a charge as to reasonable doubt and in all discussion of the burden of proof in any manner it was made clear that the burden was on the state. Considering the charge in its totality we find that no burden was placed on the appellant or that any portion of the charge was burden-shifting. On the issue of sanity the trial court did charge as follows: "I further charge you, Ladies and Gentlemen, that the act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind."

We find no error or that any harm resulted to the appellant.

4. Relative to the consequences of a verdict of not

guilty by reason of insanity, the court charged the jury as follows: "Should this be your verdict, the court charges you that the law of this state provides that it shall thereupon become the duty of the trial judge to retain jurisdiction of the person and to order the person to be confined in a state hospital for the mentally ill." The appellant contends that this was an incomplete charge in that it enumerated none of the prerequisites for release provided by law, and that the said charge could therefore be construed as meaning that the confinement would be "both of facile determination and brief duration."

The charge as given is mandatory. Code Ann. § 27-1503. We have held that it is inappropriate to charge on the remaining nonmandatory portion of the statute. *Hulsey v. State,* 233 Ga. 261 (210 SE2d 797) (1974); *Johnston v. State,* 232 Ga. 268 (206 SE2d 468) (1974); and *Pierce v. State,* supra. This enumeration is without merit.

Death Sentence Review

5. Inasmuch as the remaining enumerations of error are directed toward the sentencing phase of the trial they will be considered as part of our mandatory death sentence review. Code Ann. § 27-2537.

Appellant's argument is correct in stating that his death sentence must be set aside for failure of the trial court to make clear to the jury in his charge taken as a whole that they might in their discretion recommend a life sentence even if they found the existence of a statutory aggravating circumstance. *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977). Accordingly, the death sentence must be overturned.

Although we must order a new trial on the question of punishment, we will now address the other enumerated errors that are likely to appear on retrial.

6. The jury found as a statutory aggravating circumstance that "the offense of murder was outrageously and wantonly vile, horrible and inhuman, in that it involved torture, depravity of mind, and an aggravated battery to the victim being defined as follows: Maliciously causing bodily harm to the victim by rendering a member of her body useless and by seriously disfiguring her body."

The appellant contends that the statutory provision (Code Ann. § 27-2534.1 (b) (7)) which sets forth the above aggravating circumstance is void for vagueness and does not provide a sufficiently "clear and objective standard necessary to control the jury's discretion in imposing the death penalty."

We considered such an attack on this statutory aggravating circumstance in *Harris v. State,* 237 Ga. 718, 731 (230 SE2d 1) (1976) and rejected it. No reason appears that persuades us to change that position.

7. So much of appellant's Enumeration 15 as challenges the constitutionality of the Georgia Death Penalty Statute is likewise without merit. Gregg v. Georgia, 428 U. S. 153 (1976).

8. Appellant's other Enumerations 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 concern matters that are not likely to recur in a new trial on the sentence in light of the guidelines provided in our decisions in *Fleming v. State,* supra, and *Hawes v. State,* supra, or would require us prematurely to weigh the sentence in the absence of a jury finding based on proper instructions.

9. Although not enumerated as error we note that during the penalty phase of the trial the district attorney read the same excerpt from *Eberhart v. State,* 47 Ga. 598, 609 (1873) that was read in *Hawes v. State,* supra, and there held to be improper. Here, as there, we do not reach the question of whether this alone would require a new trial on the issue of punishment, as the death sentence is being set aside for other reasons.

*Judgment affirmed as to conviction; vacated as to sentence. New trial ordered on question of punishment. All the Justices concur, except Nichols, C. J., Jordan and Bowles, JJ., who dissent from Division 5 and vacating of sentence.*

ARGUED NOVEMBER 22, 1977 — DECIDED
MARCH 7, 1978.

Greene, Smith, Davis & Dodson, H. Darrell Greene, Jack M. Smith, for appellant.

Thomas J. Charron, District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Assistant

16

*Attorney General,* for appellee.

JORDAN, Justice, dissenting.

An examination of the entire charge in the sentencing phase of the trial leads me to the conclusion that it is not subject to this court's criticism as set forth in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

Let me set forth those portions of the charge which I consider pertinent to this problem. At the very beginning of the sentencing phase the trial court charged:

"Although you have already heard the evidentiary matter in the case and *will be able to retain and consider the evidence that you heard,* counsel are permitted under the rules of the procedure to offer additional evidence. This evidence can be offered by the State, which would go to any aggravating circumstances which upon the requirements of law they would proceed to give notice and to offer any additional evidence they may have and, *in turn, the defense can also offer additional evidence and present such evidence as they deem appropriate as to mitigation and to other matters in* the sentencing phase."

The district attorney then stated that he would rely on the notice of aggravating circumstances previously filed and that the state would have "no other evidence to introduce other than that which has come out in the trial earlier." *The appellant then introduced and examined four character witnesses.*

The trial court then proceeded to charge the jury as follows:

"The Legislature of the State of Georgia has provided for the offense of murder that there are *two* sentences which you will have to consider. *One is death by electrocution,* for the capital felony provision, *and the other one will be life imprisonment.*

"And I charge you, ladies and gentlemen of this jury, *that before you would be authorized to find a verdict fixing a sentence of death by electrocution, you must find evidence of statutory aggravating circumstances,* as I will define to you later in the charge, sufficient to authorize the supreme penalty of law. I charge you that a finding of statutory aggravating circumstances shall only be based

upon evidence *convincing your minds beyond a reasonable doubt as to the existence of one or more* of the following factual conditions in connection with the defendant's perpetration of the act for which you have found him guilty."

The court continued its charge as follows:

*"If you fix his punishment at death,* you must also designate in writing the aggravating circumstance or circumstances which you find beyond a reasonable doubt."

And further along in the charge the trial court stated:

"Now, of course, ladies and gentlemen, *the other verdict is that of life imprisonment.* That is the other verdict which you will have out with you. If you do not find the defendant subject to the laws that I have given you as to the supreme penalty, then the *alternate form of your verdict will be life imprisonment* and we will also furnish you with a form for that . . . . *You have* the indictment and *the evidence which was adduced upon the trial;* you have those matters already with you. *And also you must take into consideration that the defendant in this case has submitted additional evidence and you will take that into consideration also. Then,* ladies and gentlemen, *you will determine* the penalty or punishment which shall be imposed in this case." (Emphasis supplied.)

In my opinion this charge, viewed in its totality, made it amply clear to this jury that they were not required to bring in the death penalty and that they had an alternative to such a verdict even though an aggravating circumstance was found. It is also abundantly clear to me that the charge included an admonition to the jury that it *must* consider the mitigating circumstances based on the evidence brought out upon the trial phase and upon the additional evidence submitted to them in mitigation during the sentencing phase.

I would affirm the conviction and the sentence.

I am authorized to state that Chief Justice Nichols and Justice Bowles join in this dissent.