## 33135. SPIVEY v. THE STATE.

HALL, Justice.

Spivey was convicted in the Muscogee Superior Court of murder, kidnapping, armed robbery, and aggravated assault. He received sentences of death for murder, 20 years for kidnapping, two concurrent life imprisonment sentences for two armed robbery convictions, and two concurrent 10-year sentences for the two aggravated assault convictions. His case is here on direct appeal and for mandatory review of the death sentence imposed.

The evidence introduced at trial showed that Spivey had gone to the Final Approach cocktail lounge in Columbus, Georgia, on December 28, 1976, where he consumed several drinks. Shortly before the lounge was to close, Spivey brandished a gun. He ordered the barmaid, Mary Davidson; a waitress, Lucy Weaver; and the only remaining patron in the bar, Burt Marten, to the back of the lounge. He then took $200 from the cash drawer and $50 from Mary Davidson's purse. The manager of the cocktail lounge across the street, Buddy Allen, and a security guard, Billy Watson, who were both lingering outside, became suspicious because the front doors of the bar had not been closed as usual at the closing hour. They entered the bar and proceeded toward the back area, where Spivey and his hostages were located. As they approached him he turned around suddenly and shot them both, killing Watson on the spot. He then ordered Davidson, Weaver, and Marten to leave the lounge with him. As they were leaving Allen moaned, and Spivey turned around and shot him again. Although Allen was severely injured, he was able to run for help to the cocktail lounge across the street, whereupon Spivey sent Weaver and Marten into the lounge to ensure that the police were not called. The police were summoned, and when Spivey

became aware of this he fired several shots into the lounge, hitting one of the patrons. He then abducted Mary Davidson and absconded with her to Alabama. He was apprehended by police in Alabama, and Mary Davidson was released.

At trial, Spivey was positively identified by witnesses Davidson, Weaver, and Allen as the perpetrator of these offenses. He did not deny committing the offenses, but asserted that he was not criminally responsible because he was legally insane at the time of the crimes.

The only points raised in this appeal are Spivey's assertions that the trial court erred in instructing the jury on the defense of insanity, and in failing to charge during the sentencing stage of the trial on mitigating circumstances.

1. Considering Spivey's mental condition at the time of the commission of the crimes, it suffices to state that although there was some slight evidence that he might have been insane, a finding of insanity by the jury was not demanded.

The trial judge instructed the jury during the guilt determination stage of the trial in accordance with Code Ann. § 26-605 (Ga. L. 1968, pp. 1249, 1269), that the test for legal insanity is that if a man has reason sufficient to distinguish between right and wrong, in relation to the particular act about to be committed, he is criminally responsible. Spivey enumerates error upon the trial judge's further instructing the jury that the standard by which the acts of the accused were to be judged was the conduct of a reasonable man. He argues that this portion of the charge was misleading because it diverted the jury's attention away from his individualized conduct to the conduct of some mythical, reasonable man.

Looking at the insanity charge as a whole, we do not find it misleading. It conformed to that found in the Pattern Criminal Jury Instructions, Council of Superior Court Judges of Georgia (pp. 31-34). The jury were adequately instructed that in determining the issue of sanity, they should consider the acts and mental condition of the accused as revealed by the evidence before them, before and after the commission of the offense. They were

further instructed to consider the declarations, if any, of the accused made at the time of the offense, or reasonably close thereto, as proof of his mental condition at the time of the crime. The excerpt from the charge could not have misled the jury in the manner suggested, and this enumeration of error is without merit.

2. The trial judge instructed the jury that in reaching a determination of the penalty to be imposed, they were authorized to consider all of the evidence received in open court in both phases of the trial, and all of the facts and circumstances of the case. There was evidence introduced during the trial that would have authorized the jury to find that Spivey committed the murder while under the influence of extreme mental or emotional disturbance, and that his capacity to appreciate the criminality of his conduct or to conform his conduct with the requirements of the law was substantially impaired. He argues here that these two factors constitute mitigating circumstances under Georgia's capital punishment statute (see Code Ann. § 27-2503), and that the court should have charged the jury specifically that these two factors constituted mitigating circumstances. The transcript shows that defense counsel strenuously argued to the jury the defendant's mental condition, and particularly his psychiatric history, as a reason for not imposing the death penalty.

Spivey's argument raises a point which has already been decided against him in *Thomas v. State,* 240 Ga. 393 (242 SE2d 1)(1978) and *Potts v. State,* 241 Ga. 67 (243 SE2d 570)(1978). In both those cases we rejected the argument that the trial court must single out and name in the charge circumstances which defendant claims are mitigating. The reason behind that ruling was that Georgia law nowhere defines mitigating circumstances. "Mitigating circumstances" are referred to in Code Ann. § 27-2534.1 (b) and § 27-2503, but the statutes are wholly silent on what they shall be. Nothing in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833)(1977) should be read to mean otherwise. The conclusion is inescapable that the legislature meant to empower the jury to consider as mitigating anything they found to be mitigating, without limitation or definition. This is a constitutionally valid

procedure.

In Jurek v. Texas, 428 U. S. 262 (96 SC 2950)(1976) the United States Supreme Court approved the Texas capital penalty scheme because the jury were permitted to consider mitigating circumstances, even though the Texas jury never even heard the phrase "mitigating circumstances" and never received any definition thereof. Their statutory duty was (among others) to determine "whether there is a probability that the defendant would commit acts of violence that would constitute a continuing threat to society." 428 U. S. at 272. The Supreme Court approved the procedure because the questions asked of the jury were so constructed "that in considering whether to impose a death sentence the jury may be asked to consider whatever evidence of mitigating circumstances the defense can bring before it." Id. at 273.

After studying the Supreme Court's Jurek opinion, and after obtaining and studying the trial court's charge to the jury as actually given at Jerry Lane Jurek's trial, we conclude that the United States Supreme Court would not have affirmed Jurek's death penalty, as they did, unless they were satisfied that a defendant's constitutional rights were adequately preserved in a capital punishment system which had the following two characteristics:

1. The death penalty is not mandatory;

2. The jury's discretion to choose life or death is focused to some extent on the particularized nature of the crime and they are permitted to consider not only aggravating circumstances, but also any mitigating circumstances which have appeared in the evidence, *though they need not ever hear the words "mitigating circumstances" nor need they ever be told expressly to consider them.*

The italicized phrase necessarily follows from this language of the Supreme Court in Jurek: "The Texas statute does not explicitly speak of mitigating circumstances; it directs only that the jury answer three questions. Thus, the constitutionality of the Texas procedures turns on whether the enumerated questions allow consideration of particularized mitigating factors." 428 U. S. at 272.

The court held that they did.

When Georgia juries are instructed in sentencing to consider all the facts and circumstances which have appeared at both phases of the trial, this necessarily includes any mitigating circumstances which defendant has shown, or argued, or both. The trial court did not err in failing to use the talismanic words "mitigating circumstances," nor did it err in failing to charge specifically that certain evidence was to be deemed mitigating.

In recent months, this court has reversed sentences of death in six cases for errors in the jury charge on the sentencing phase. Those cases are: *Fleming v. State,* 240 Ga. 142 (240 SE2d 37)(1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833)(1977); *Spraggins v. State,* 240 Ga. 759 (243 SE2d 20)(1978); *Davis v. State,* 240 Ga. 763 (243 SE2d 12)(1978); *Redd v. State,* 240 Ga. 753 (243 SE2d 16)(1978); and *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978). Review of those cases shows that, in considering the adequacy of a jury charge on the sentencing phase of the trial, the ultimate test is whether a reasonable juror, considering the charge as a whole, would know that he should consider all the facts and circumstances of the case as presented during both phases of the trial (which necessarily include any mitigating and aggravating facts), and then, even though he might find one or more of the statutory aggravating circumstances to exist, would know that he might recommend life imprisonment.

This test is substantive rather than formalistic and conforms with the mandate of the Supreme Court of the United States that "a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U. S. 141, 146, 147 (1973); Boyd v. United States, 271 U. S. 104, 107 (1926). See also Pound, the Causes of Popular Dissatisfaction with the Administration of Justice, 29 ABA Rep. 395 (1906); Llewellyn, the Common Law Tradition, Deciding Appeals 36-37 (1960); Meador, Criminal Appeals, English Practice and American Reforms, 97, 107 (1973).

The charge given to Spivey's jury meets that test.

*Sentence Review*

The death penalty imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1. This court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and, whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3). We conclude that the sentence of death imposed on Ronald Spivey was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found as a statutory aggravating circumstance that the offense of murder was committed while the offender was engaged in the commission of a capital felony, to wit: armed robbery. Code Ann. § 27-2534.1 (b) (2).

The evidence supports the statutory aggravating circumstance found and the verdict.

Spivey, surprised in the act of armed robbery by a police officer in uniform, shot the officer after time for contemplation although the officer did not draw his weapon; fired additional bullets into the victim when he made a noise as he lay dying; and boasted to his robbery and kidnap victim that he had shot five people that day.

Notwithstanding his high intelligence and better than average educational background, this 37-year-old man was already well into a life of crime at the time of this offense as evidenced by his record of prior criminal activity.

Although Spivey denies any independent recollection of the events, the jury was justified in rejecting his claim based on the evidence before it.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the similar cases listed in the Appendix support affirmance of the death penalty for murder.

Ronald Spivey's sentence to death for murder is not excessive or disproportionate considering the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Hill and Marshall, JJ., who dissent.*

ARGUED JANUARY 17, 1978 — DECIDED JUNE 8, 1978 — REHEARING DENIED JUNE 29, 1978.

*James C. Bonner, Jr.,* for appellant.

*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, James L. Mackay, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1976); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978).

HILL, Justice, dissenting.

The majority opinion approves a sentencing charge in which the jury was not told to consider mitigating circumstances. Our statute provides that ". . . the judge . . . shall include in his instructions to the jury for it to consider, any mitigating circumstances . . ." Code Ann. § 27-3534.1 (b). The majority opinion never mentions this requirement of our law.

As the majority opinion notes, in recent months this court has reversed sentences of death in six cases for errors in the jury charge on the sentencing phase. The

incoming tide of death penalty cases has worn away the court's resolve, first expressed less than a year ago in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978). In *Fleming,* supra, 240 Ga. at 146-147, we said that our system for imposing the death penalty requires the jury to consider two issues: first, aggravating circumstances, and second, after finding an aggravating circumstance ". . . the jury must then consider the mitigating and aggravating circumstances relevant to the defendant and determine whether the death penalty is appropriate . . ." In *Hawes,* supra, 240 Ga. 334, we held that it was error for the trial court to fail ". . . to inform the jury that they were authorized to consider mitigating circumstances when there were mitigating circumstances authorized by law and warranted by the evidence. . ."

The majority opinion retreats from these clear statements of law rendered within the year. The majority now say that it is sufficient if a reasonable juror considering the charge as a whole would know that he should consider all the facts and circumstances of the case, and even though he might find one or more aggravating circumstances to exist, would know that he might recommend life imprisonment. In doing so the majority ignore the statutory requirement that the judge instruct the jury to consider any mitigating circumstances. Because the trial court did not follow the mandate of our law and instruct the jury to consider any mitigating circumstances, I must dissent from the imposition of the death penalty in this case.

I am authorized to state that Justice Marshall joins in this dissent.