## 36054. HILL v. THE STATE.

BOWLES, Justice.

This is a death case. Defendant was convicted of the forcible rape and murder of a twelve-year-old girl. The jury sentenced him to death for the murder, finding two aggravating circumstances. One, that the offense of murder was committed while defendant was engaged in the commission of another capital felony, to wit: rape. Code Ann. § 27-2534.1(b) (2). Two, that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim. Code Ann. § 27-2534.1(b) (7). Defendant was sentenced to life for the rape.

The jury was authorized to find the following facts:

Around 11:00 a.m. on the date of her death the victim was observed buying candy at the West End Service Station by the station owner. Shortly thereafter the owner also noticed defendant standing outside the station. The station owner testified that at that time defendant had one arm in a white sling.

At approximately 12:30 p.m. that day the victim and defendant were seen by three witnesses walking together near the place where her body was later found. The witnesses who observed them testified that defendant had one arm around the victim's waist; his other arm was in a white sling. About an hour later defendant was again seen at the West End Service Station. The station owner testified that defendant was "talking filthy and wild, crazy . . ." "about how he had killed somebody over some change or something or other." The station owner noticed that defendant had bleeding scratches on his face and neck and did not have on the arm sling he had been wearing earlier. Defendant responded to questions concerning the scratches by saying that he had fallen into some briars. A short while later defendant told some neighbors that he had gotten scratched when he fell into briars while walking in the woods.

Several hours after these events occurred defendant telephoned the sheriff's office and told his brother, a deputy sheriff, that he had discovered a human body while walking through the woods. Because the body had been found inside the city limits of Milledgeville the Milledgeville police were called in. Defendant led a search party to an

area of dense undergrowth where, about 15 feet off the trail, the body of the victim was found. The body was almost completely covered with pine straw. Law officers testified that the covered body was not immediately recognizable as human because it was so well concealed.

Police officers uncovered the body and asked defendant if he recognized the victim. Defendant twice denied knowing "that broad," although he later admitted he was well-acquainted with her. Features of the victim were not so distorted as to render her unrecognizable.

The victim had been bludgeoned to death. She sustained massive injuries to the abdominal area, including a ruptured spleen and pancreas. Three ribs had been broken. Both sides of the victim's head were severely bruised and her brain was badly swollen. Fingernail marks were found on her face and chest. Blood was discovered on the trail leading to the body and on two trees, approximately two and one-half feet apart, at a height of three and one-half feet, indicating that the victim had been beaten up against the trees. The medical examiner testified it would have taken 5 - 15 minutes for the victim to die and that she would have experienced considerable pain.

When found the victim was clad only in short brown pants. Two garments tied one arm to her chest; her other arm was free. The autopsy revealed non-mobile sperm and a high level of acid phosphatase; the medical examiner concluded that the victim had engaged in sexual intercourse within twelve hours prior to her death. No massive injuries to her genitalia were found although some trauma around the vaginal opening was sustained.

Since defendant had reported his discovery of the body he was questioned by the police as to the circumstances under which he discovered the body. Upon noticing the scratches on defendant's neck the police became suspicious of him and read him his Miranda rights. Defendant made a voluntary statement to the effect that he had received the scratches on his neck while leading the search party to the body. Defendant also told police that he had either been with friends or at his home all day until he discovered the body.

The police obtained from defendant's mother clothes that defendant had worn earlier on the day of the murder. At first defendant denied that the clothes were his, but at trial admitted that they belonged to him. The shirt was covered with blood, but was so soiled that the lab technicians were unable to get an exact blood type due to bacterial interference. Both technicians did testify that the blood on the defendant's shirt was conclusively not that of defendant, but it was determined that it could have been that of the victim. Defendant testified that the blood on his shirt came from bleeding

sores on his body. Fingernail scrapings taken from the victim revealed human blood, but of an amount too small to type.

Police found a white arm sling near the victim's bicycle. An officer fastened it so that it could not be adjusted and asked defendant if he would try it on. Defendant agreed. The officer testified that it was "a perfect fit." Defendant denied that the sling belonged to him.

Defendant alleges that the trial court erred in overruling his motion for a new trial on the general grounds.

I. Defendant first argues that the evidence adduced at trial does not support a conviction of forcible rape. There are three elements to this offense. "A person commits [forcible] rape when he has [1] carnal knowledge of a female, [2] forcibly and [3] against her will." Code Ann. § 26-2001. At trial the medical examiner testified that the victim had experienced sexual intercourse within twelve hours of her death. The victim's mother testified that the victim had been in her presence for 36 consecutive hours prior to her leaving the house at 11:00 a.m. on the morning of her death. The victim's age in this case indicates that, as a matter of law, the intercourse was non-consensual and "against her will." *Drake v. State,* 239 Ga. 232 (236 SE2d 748) (1977). Due to the death of the victim there is no direct evidence available as to the use of force in committing the offense. However, the evidence showed that the victim had been severely beaten about the head, chest and abdomen; that one arm was bound to her chest by two garments; that her chest was covered with fingernail marks; that three ribs had been broken; and that there was evidence of some trauma around the genital area. Additionally defendant's neck was badly scratched and traces of human blood were found under the victim's fingernails. These facts would have authorized a rational trier of fact to conclude that the defendant had used force in raping the victim. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We conclude that there was sufficient evidence to support a conviction of forcible rape. See *Spraggins v. State,* 240 Ga. 759 (243 SE2d 20) (1978).

II. Defendant next contends that his conviction for murder should be reversed due to insufficient evidence. Defendant was observed by three witnesses walking with the victim on the day of her murder, wearing a white arm sling. A short while later defendant was seen acting "crazy" and "talking about how he had killed somebody." At this time defendant's neck was badly scratched and he was not wearing his white arm sling. A white sling fitting defendant's arm was found near the victim's bicycle. Traces of blood were found under the fingernails of the victim. The shirt defendant had been wearing on the day of the victim's death was covered with blood which was found

to be conclusively not that of the defendant but could have been that of the victim. When asked by the police if he could identify the victim, defendant twice stated that he did not know her, although the evidence showed they were well-acquainted. Defendant also testified that he stumbled across the body while walking through the woods, yet the evidence at trial showed that the body was well concealed and could not be seen from the path in the woods. This evidence would authorize the jury's finding that defendant murdered the victim. Jackson v. Virginia, supra. Therefore, there is no merit to this argument.

III. Defendant contends that the trial court erred in refusing to charge the jury on the offense of statutory rape. Defendant argues that the evidence is sufficient to raise the issue of "whether the intercourse which [the victim] had with someone could have been statutory rape." Defendant cites McFall v. State, 235 Ga. 105, 107 (218 SE2d 839) (1975) for the proposition that it is "incumbent upon the court to instruct the jury to find either statutory rape or forcible rape where both are in issue" in a case where the alleged victim has not reached the age of consent. However, we discredited McFall in Drake v. State, supra. In Drake we said "[w]hen an act of sexual intercourse with a girl under 14 is shown, statutory rape is shown. If the state desires to convict a defendant of forcible rape, it must prove the element of force by acts of force (or mental coercion) — age has nothing to do with it. Considerations of 'consent' and 'force' and 'against her will' are irrelevant in a statutory rape case, and the age of the victim is irrelevant in a forcible rape case except insofar as it may show her incapable of giving consent and thereby supply the 'against her will' element," supra, at 233. The elements of force and "against her will" are not synonymous.

Nor can it be said that statutory rape is a lesser included offense of forcible rape. In statutory rape the State must prove two elements: an act of sexual intercourse with a female, not the defendant's spouse and that the victim is under the age of 14. Code Ann. § 26-2018. As stated above, the elements of force and consent are irrelevant. To prove forcible rape the State must show that (1) the defendant had carnal knowledge of a female (2) forcibly and (3) against her will. Code Ann. § 26-2001. Although age of the victim may be incidentally proved in the evidence of a forcible rape case, proof of the victim's age is not necessary to establish a case of forcible rape. Thus, since statutory rape requires proof of an element — age — that forcible rape does not, it cannot be a lesser included offense of forcible rape. Clearly these are two separate offenses, each requiring proof of different elements.

In a case where, as here, the State does not allege the victim's age

in an indictment charging forcible rape, and the State establishes all elements of forcible rape it is not necessary to charge the jury on statutory rape. Therefore, there is no merit to this argument.

IV. Defendant next argues that the trial court erred in admitting as State's Exhibits No. 28 and No. 29 two color slides which were taken during the autopsy performed on the victim. The slides depicted damage to the victim's head, specifically hemorrhaging and swelling of the brain. Defendant contends that these slides were prejudicial and inflammatory and that they added nothing probative to the record. Defendant states that he would have no objection to the admission of photographs taken of injuries to the victim's abdomen since the medical examiner testified that abdominal injuries were the cause of death. However, defendant argues that only those photographs which illustrate the injuries which resulted in the death of the victim should be admitted into evidence, and that since injuries to the victim's head did not result in death, photographs of them should be excluded.

We do not accept this argument.

Whether the jury was influenced by passion and prejudice in imposing the death sentence will be considered in our sentence review of this case. "There is abundant case authority that photographs showing an accurate and correct representation of a person or an object material to the issues in the case are admissible. The location of wounds is material to the issues in a homicide case, and photographs should not be excluded simply because there is other evidence of the location of the wounds. To rule otherwise would unfairly preclude the state from establishing a material fact by more than one source of evidence." *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974). See also, *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Davis v. State,* 240 Ga. 763 (243 SE2d 12) (1978).

"Georgia law is abundantly clear that a photograph which is relevant and material to the issues in the case is not excludable on the ground that it would inflame the minds of the jurors to see it." *Mooney v. State,* 243 Ga. 373, 394 (254 SE2d 337) (1979); *Stevens v. State,* 242 Ga. 34 (247 SE2d 838) (1978). See also, *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980).

"The photographs were made during the autopsy and depict the extent and nature of the wounds suffered by the victim. The location of the wounds is material to the issues in a homicide case and the trial court did not err in admitting them though there was other evidence from the examining physician as to the nature and location of the wounds." *Lamb v. State,* 241 Ga. 10, 13 (243 SE2d 59) (1978).

The photographs in this case were properly admitted to illustrate the testimony of the medical examiner and to show the

extent of victim's wounds, which bear both on the issue of murder and of forcible rape.

V. Defendant next contends that the trial court erred in admitting into evidence a statement made by defendant to police officers after defendant had received Miranda warnings in that the statement was hearsay. Defendant's statement purported to account for his whereabouts on the day of the murder and stated that he had received the scratches on his neck while leading the search party through briar patches to the victim's body. The police officer who took this statement from defendant read it to the jury at trial, deleting defendant's statement that he wished to answer no further questions. Subsequently the service station owner testified that he had observed the scratches on defendant's neck some hours before defendant had lead the search party to the body.

A statement made by a suspect to police officers, although hearsay, may be admissible. However "[a]ll admissions shall be scanned with care, and confession of guilt shall be received with great caution." Code Ann. § 38-420. Here defendant had received Miranda warnings prior to making his statement. The trial court conducted a Jackson v. Denno hearing and determined that defendant had voluntarily made the statement. The jury was instructed that they must find the defendant's statement to have been voluntarily made before they could consider it.

The statements made by defendant to police were not incriminating on their face. However, when directly contradicted by statements made by defendant to another witness these statements became incriminating and were competent evidence for the jury to consider. See *Birks v. State,* 237 Ga. 861 (230 SE2d 294) (1976). The trial court did not err in admitting defendant's statement.

VI. Finally defendant avers that the trial court erred in charging the jury that defendant's statement to the police was "an alleged incriminating statement or confession if [the jury found] it to be so." Defendant argues that the trial court erred in charging the jury that his statement could have been a confession when there is no evidence to support such a charge.

The trial court gave a lengthy charge on the admissibility of and weight to be given to defendant's statement to police. The trial judge consistently qualified the nature of defendant's statement by instructing the jury that it was "an *alleged* incriminating statement or confession *if you find it to be so."* (Emphasis supplied.) The court charged the jury that before they considered the statement they must determine that the defendant made it freely and voluntarily. The court further instructed the jury that even if they concluded that the statement was voluntarily made, they should nonetheless regard it

with great caution in determining whether it was "truthful" and "accurately recorded," and that they alone should decide what weight to give the statement under the general rules of evidence.

Although it is clear that the defendant's statement to the police did not amount to a confession of the crime,[1] *Robinson v. State,* 232 Ga. 123 (205 SE2d 210) (1974), it is also apparent that the court did not charge fully on the law of confession, but rather cautioned the jury to carefully scrutinize the defendant's statement and to consider it as they would any other statement admitted into evidence.

A study of the record in this case reveals overwhelming evidence of defendant's guilt. If we consider only defendant's statement to the police to be the "confession" referred to in the charge, we find that it may have been error for the court to use even incidentally the word "confession" because the statement to the police was not a confession. On the other hand, we have carefully weighed the harm of the possible error in view of the entire charge given by the court and have likewise considered its harm after considering all the evidence presented at trial. "Given the collateral nature of the charge, the considerable strength of the evidence supporting the verdict and the defendant's demonstrated lack of credibility," we conclude that it is highly probable that the use of the word "confession" did not contribute to the verdict and judgment. *Mimbs v. State,* 144 Ga. App. 628 (241 SE2d 494) (1978); see also, *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

Last, at the conclusion of the charge the court inquired of defendant's counsel whether he had any exceptions to the charges as given. Counsel replied that he had none. We find that defendant "has waived his right to enumerate error by failing to respond to the court's inquiry on any objections to the charge." *White v. State,* 243 Ga. 250, 251 (253 SE2d 694) (1979).

Therefore, there is no merit to this argument.

### Sentence Review.

The death penalty imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1 to authorize affirmance. This court must determine in conformance with Code Ann. § 27-2537 whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's findings of the statutory aggravating

---

[1]Though, it should also be noted that on the day of the murder, shortly after the defendant had been seen with the victim, he was heard to remark that he had "killed somebody over some change."

circumstances, and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Upon review of the record and transcript in this case we find that the sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.

The jury found the following statutory aggravating circumstances beyond a reasonable doubt:

(1) The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: rape, Code Ann. § 27-2534.1 (b) (2).

(2) The offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7).

The evidence supports the jury's finding of Code Ann. § 27-2534.1 (b) (2) beyond a reasonable doubt. See Division 1 herein. Jackson v. Virginia, supra.

However, in that the sentence of death herein is partially supported by a finding of Code Ann. § 27-2534.1 (b) (7),[2] this sentence must be reviewed in light of the recent United States Supreme Court decision in Godfrey v. Georgia, 446 U. S. —— (100 SC 1759, 64 LE2d 398) (1980). In order for Code Ann. § 27-2534.1 (b) (7) to be constitutionally applied in a given case, the evidence presented at trial must satisfy the criteria set forth in Hance v. State, 245 Ga. 856 (268 SE2d 339) (1980), as they apply to the specific factual situation.

We find that the murder was outrageously or wantonly vile, horrible or inhuman in that this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. The victim was not killed instantaneously. Rather, under the evidence of this case death took between five and fifteen minutes. This was not a domestic murder but a savage sexual attack upon a 12-year-old child perpetrated by a 23-year-old male. Unlike the murder in Godfrey, supra, the victim was not threatening to the appellant nor subjecting him to emotional trauma. He attempted in every way to conceal his crime. Under the evidence of this case the victim, a 12-year-old female was beaten to death in the process of a forcible rape. The evidence set forth in this opinion establishes beyond a reasonable doubt that the victim was subjected to serious physical abuse prior to

---

[2]In that the jury returned multiple aggravating circumstances (Code Ann. §§ 27-2534.1 (b) (2) and 27-2534.1 (b) (7), under our decisions, the death penalty herein may be upheld upon Code Ann. § 27-2534.1 (b) (2), Gates v. State, 244 Ga. 587 (261 SE2d 349) (1979), Burger v. State, 245 Ga. 458 (265 SE2d 796) (1980).

death. Torture occurs when the victim is subjected to serious physical abuse before death. *Hance v. State,* supra. The victim was also subjected to serious sexual abuse which under the evidence of this case constituted serious physical abuse. *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974), *Hance v. State,* supra.

In determining whether the evidence shows "depravity of mind" the age and physical characteristics of the victim may be considered. *Hance v. State,* supra. A finding of torture will support a finding of depravity of mind. *Hance v. State,* supra.

This court finds that the evidence factually substantiates and supports both the jury's finding of Code Ann. § 27-2534.1 (b) (7) and the sentence of death beyond a reasonable doubt and that the section is constitutionally applied under the evidence in this case. Jackson v. Virginia, supra, Godfrey v. Georgia, supra, *Hance v. State,* supra.

We have thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the appendix support affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur, except that as to Divisions 3 and 6, Hill, J., concurs in the judgment only.*

ARGUED APRIL 15, 1980 — DECIDED SEPTEMBER 24, 1980.

*Robert M. Boulineau,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, Michael R. Johnson, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Griggs v. State,* 241 Ga. 317 (245 SE2d 269) (1978); *Presnell v. State,* 241 Ga. 49 (243 SE2d 496) (1978); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Bowen v. State,* 244 Ga. 495 (260 SE2d 909) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980); *Thomas v. State,*

245 Ga. 688 (266 SE2d 499) (1980).