**Tony Curtis HILL, Petitioner,**

v.

**Walter D. ZANT, Respondent.**

**Civ. A. No. 82–271–1–MAC.**

United States District Court, M.D. Georgia, Macon Division.

June 30, 1986.

Floyd Buford, Jr., Macon, Ga., for petitioner.

Mary Beth Westmoreland, Atlanta, Ga., for respondent.

OWENS, District Judge:

Federal law provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (West 1977). Pursuant to this law, Tony Curtis Hill has filed a petition for a writ of habeas corpus contending that he was unconstitutionally convicted of murder and rape. This court is thus required to determine whether or not the State of Georgia unconstitutionally convicted and imprisoned petitioner Hill.

On July 17, 1979, petitioner was convicted of the murder and rape of twelve-year-old Angela Johnson in Baldwin County, Georgia. He was originally sentenced to death for the murder and to life imprisonment for the rape. His convictions and sentences were affirmed on direct appeal. *Hill v. State*, 246 Ga. 402, 271 S.E.2d 802 (1980), *cert. denied*, 451 U.S. 923, 101 S.Ct. 2001, 68 L.Ed.2d 313, *reh'g denied*, 452 U.S. 932, 101 S.Ct. 3069, 69 L.Ed.2d 433 (1981). Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Butts County, which entered an order setting aside his death sentence on the ground that petitioner received ineffective assistance of counsel at the sentencing phase of his trial. The Georgia Supreme Court affirmed. Subsequently, petitioner was resentenced to life imprisonment.

Petitioner raises three issues in his petition. He claims (1) that his right against self-incrimination was violated because police officers questioned him after he had stated he wished to remain silent; (2) that his due process rights under the sixth and fourteenth amendments to the United States Constitution were violated by the trial court's refusal to charge the jury on statutory rape as a lesser included offense to forcible rape; and (3) that the evidence in his trial was not sufficient to support the convictions. The court also raised sua sponte the issue of whether the trial court gave the jury an improper burden-shifting instruction on intent. *See* order dated January 27, 1986.

1. The court has given the state court's factual findings a presumption of correctness. *See* 28 U.S.C.A. § 2254(d) (West 1977); *Sumner v.*

Pursuant to Rule 8, 28 U.S.C.A. foll. § 2254 (West 1977), this court must initially determine whether an evidentiary hearing is required. Under *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1962),

> where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair hearing in state court, either at the time of the trial or in a collateral proceeding. In other words, a federal evidentiary hearing is required unless the state court trier of facts has after a full hearing reliably found the relevant facts.

*See also* 28 U.S.C.A. § 2254(d) (West 1977).

This court has carefully considered petitioner Hill's trial and state habeas transcripts and has reviewed the appellate record. Petitioner has not shown, and this court has not found, any deficiency in the state court proceedings which would entitle the petitioner to an evidentiary hearing in this court. Accordingly, petitioner's request for an evidentiary hearing is DENIED.

### Findings of Fact [1]

1. Angela Johnson disappeared on the afternoon of April 22, 1979. Trial transcript at 339–343. Her body was found covered with pinestraw in a wooded area in Baldwin County that same day. *Id.* at 153–54.

2. Miss Johnson went to the West End service station in Milledgeville on April 22, 1979, to purchase candy. Trial transcript at 206.

3. Petitioner was at the service station at approximately the same time—between 11:30 a.m. and noon. Trial transcript at 205–07.

4. At approximately 12:30 p.m. that same day, petitioner was seen walking with the victim along a railroad track near the location where her body was discovered. Trial transcript at 219–221, 229–233.

*Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

5.   Petitioner returned to the service station at approximately 1:30 p.m. with scratches on his face and neck.   Trial transcript at 205–07.   Petitioner also was missing an arm sling he had been wearing earlier in the day.   Trial transcript at 207.

6.   The victim had been with either her mother or her aunt for thirty-six hours prior to the time she disappeared and she was under their supervision.   Trial transcript at 343, 349.

7.   Physical evidence showed that the victim had engaged in sexual intercourse shortly before she was killed.   Trial transcript at 320–21.

8.   An autopsy revealed the victim suffered several severe blows to the head from a blunt instrument.   Trial transcript at 322–337.

9.   Scrapings containing small amounts of blood were recovered from under the victim's fingernails.   Trial transcript at 299.   It was impossible to determine the blood type.   *Id.*

10.   A white arm sling that fit the petitioner was found near the victim's bicycle, not far from her body.   Trial transcript at 270–72.

11.   The shirt worn by the petitioner on the day of Miss Johnson's death was found to have several blood stains on it.   Trial transcript at 280, 298–302.

12.   Tests conducted on the shirt showed the blood stains were inconsistent with the enzyme makeup of the petitioner's blood, but consistent with the enzyme makeup of the victim's blood.   Trial transcript at 306–09.

13.   Petitioner led authorities to the site of the victim's body.   Trial transcript at 188.

14.   At the time the authorities were at the scene of the crime, they did not consider petitioner a suspect and accordingly did not advise him of his *Miranda* rights.   Trial transcript at 188–89.

15.   Petitioner did not become a suspect and was not placed under arrest until an officer at the police station noticed scratch-es on his face and neck.   Trial transcript at 189.

16.   At that point, petitioner was advised of his *Miranda* rights.   Trial transcript at 190.   Petitioner freely signed a waiver of his *Miranda* rights.   *Id.* at 191.

17.   When asked whether he knew the identity of the victim he refused to answer further questions.   Trial transcript at 193.   The questioning immediately ceased.   *Id.*

18.   Later in the day, another police officer asked petitioner questions concerning clothes he had been wearing.   Trial transcript at 200–03.

19.   Petitioner then freely answered the questions put to him by police officers.   Trial transcript at 203.

## Conclusions of Law

### Police Questioning

██   Petitioner first claims that his right against compulsory self-incrimination was violated when police initiated questioning some time after petitioner had expressed a desire to remain silent.   The resolution of this contention is governed by *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person being questioned.   At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.   Clearly, therefore, neither this passage nor any other passage in the Miranda opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on

any subject, once the person in custody has indicated a desire to remain silent. *Id.* at 102–03, 96 S.Ct. at 323, 46 L.Ed.2d at 321 (footnote omitted). In this case, police stopped the questioning as soon as the petitioner objected to answering further questions. They resumed questioning some time later after a cooling-off period. Thus, the police conduct falls within the guidelines of *Mosely* and did not violate the petitioner's rights.

### Jury Charge—Statutory Rape

■ Petitioner next asserts his rights were violated because the trial court failed to charge the jury on statutory rape as a lesser included offense to forcible rape. In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court invalidated an Alabama statute which prohibited a court from charging the jury on a lesser included offense when the defendant was being tried for a capital crime. However, the Court stated that its decision rested upon the extreme nature of the death penalty:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake.

*Id.* at 637, 100 S.Ct. 2883, 65 L.Ed.2d at 402–03.

Since rape is no longer punishable by death, *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), there is no reason to apply the special standard that is applicable in capital cases. In cases where the death penalty is not an issue, the former Fifth Circuit has held that failure to charge on a lesser included offense is not constitutional error. *Easter v. Estelle,* 609 F.2d 756, 758 (5th Cir.1980).

### Insufficient Evidence

■ Petitioner's final contention is that his convictions for murder and rape were based on insufficient evidence and thus violated his right to due process of law as guaranteed by the fourteenth amendment. Under *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 443 L.Ed.2d 560, 573 (1979), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The record establishes that there was sufficient evidence for a rational trier of fact to convict the petitioner. Hill was seen at the service station at the same time as the victim and later was seen walking with her. An arm sling, which the jury could infer was one the petitioner had been wearing earlier in the day, was found not far from her body. The petitioner had scratches on his face and neck, indicating he had been in a struggle; scrapings from the victim's fingernails indicated she had struggled with and scratched her attacker. A shirt, identified as being one the petitioner had worn on the day of the murder, contained numerous blood stains which were inconsistent with the petitioner's blood enzyme makeup, but consistent with the blood enzyme makeup of the victim. On the day Miss Johnson was murdered, the petitioner led the police to a secluded, wooded area where her body was found covered with pinestraw. Medical testimony established that the victim had engaged in sexual intercourse shortly before her death. Since the victim was a twelve-year-old, intercourse is presumed to be against

her will as a matter of law because in Georgia a female under fourteen is legally incapable of consenting to sexual intercourse. *Drake v. State,* 239 Ga. 232, 233, 236 S.E.2d 748, 750 (1977).

In summary, the physical and circumstantial evidence establishes that a rational trier of fact could have found the petitioner committed the crimes.

*Jury Charge—Intent*

■ The trial court instructed the jury as follows:

Intent is always a question for the jury and is ordinarily ascertained by act and conduct. Intent may be shown in many ways, provided the jury finds that it existed from the evidence produced before them, that is here in this courtroom during this trial. It may be inferred from the proven circumstances or by acts and conduct or *it may be presumed when it is the natural and necessary consequences of the act.*

Trial transcript at 460–61 (emphasis added). The respondent argues that this charge created a permissive inference rather than a conclusive presumption and is thus constitutional.

The Eleventh Circuit has analyzed this same jury charge on two occasions and found it to create merely a permissive inference. *See Potts v. Zant,* 734 F.2d 526, 533–34 (11th Cir.1984); *Hance v. Zant,* 696 F.2d 940, 953 (11th Cir.1983). The use of the word "may" distinguishes this charge from the one held unconstitutional in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).[2]

■ However, even if the jury charge is a conclusive presumption, the error is harmless under the present state of the law. The Supreme Court has expressly stated that it has not resolved whether an improper jury charge that shifts the burden to the defendant can ever be harmless.

*Id.* at —, 105 S.Ct. at 1977, 85 L.Ed.2d at 360. In the Eleventh Circuit, this kind of error can be harmless in two situations: first, when intent is not at issue at the trial; or second, when evidence of intent is overwhelming. *See Miller v. Norvell,* 775 F.2d 1572, 1576 (11th Cir.1985). When the unrebutted evidence is that the fatal blows were administered with extreme force and repetition, which could not have been the result of accident or other nonintentional conduct, there is overwhelming evidence that the murderer—whoever he is—intended to kill. *Tucker v. Kemp,* 762 F.2d 1496, 1503 (11th Cir.1985) (en banc), *cited in Drake v. Kemp,* 762 F.2d 1449, 1455 (11th Cir.1985). Therefore, the charge is harmless error even if it creates a conclusive presumption.

### Conclusion

In summary, all three grounds for relief raised by the petitioner are without merit. In addition, the jury charge issue raised sua sponte by the court must be resolved in the respondent's favor. Accordingly, Hill's petition for a writ of habeas corpus is DENIED.

---

**2.** The jury instruction found unconstitutional in *Franklin* is as follows:

The acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.
*Franklin,* 471 U.S. at —, 105 S.Ct. 1972, 85 L.E.2d at 354.