## 34813. BROOKS v. THE STATE.

JORDAN, Justice.

Appellant-defendant, William Anthony Brooks, was indicted on August 16, 1977, by the Muscogee County grand jury for the crimes of murder, kidnapping, rape, and armed robbery. On Nov. 18, 1977, the jury found appellant guilty on all four counts, and after specifically finding the existence of statutory aggravating circumstances, recommended the death penalty for the crime of murder. Accordingly, the trial court, on Nov. 18, 1977, sentenced the appellant to death for the crime of murder, to life for kidnapping and rape, and to twenty years for armed robbery. The case is here on appeal and mandatory review of the death penalty.

## I. The Evidence.

A summary of the evidence is as follows: On the morning of July 15, 1977, the appellant, while walking along Saint Mary's Road in Muscogee County, Georgia, noticed Carol Jeannine Galloway, age 23, in the front yard of her parents' residence. The appellant accosted Miss Galloway at gunpoint with instructions that she get into her car, valued at $3,500, and drive the two of them to the Dawson Elementary School, one mile from the Galloway home. Upon arriving at the school, the appellant ordered Miss Galloway to park the car and walk into the nearby woods where he first robbed Miss Galloway of at least $20 and then raped her. Following appellant's completion of the sex act, Miss Galloway reiterated her continuing plea that appellant permit her to leave. Appellant's sole response was to ask Miss Galloway if she had ever experienced sex before, and when told by Miss Galloway that she had not, to taunt her with his disbelief. At this point, Miss Galloway began to scream. When she did not heed his warning to stop, the appellant, to impress upon Miss Galloway the seriousness of his warning, aimed his gun at her face and pulled the hammer back into a cocked position. When Miss Galloway continued to scream, the appellant fired one shot, his bullet piercing Miss Galloway's lower neck and causing a slow but steady loss of blood which resulted (but only after the passage of a full two hours) in her death. Immediately after firing the shot, the appellant returned to Miss Galloway's car. As he was driving out of the school yard he encountered Bobby Murray, Miss Galloway's boyfriend, driving in search of Miss Galloway. In his successful effort to elude Mr. Murray the appellant abandoned his victim's car and caught a ride to the East Wynnton section of Columbus where he spent the night with friends. On July 21, 1977, having spent the interim at his father's home in Columbus, the defendant fled to Atlanta, Georgia, there to be arrested on August 11, 1977. He made confessions to the crimes which were introduced into evidence.

This court holds the evidence in support of the verdicts legally sufficient since under such evidence any rational trier of fact could have found that the appellant was guilty beyond a reasonable doubt of each and every

crime charged. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979).

## II. Enumerations of Error.

On appeal, appellant enumerates five errors: his motion for change of venue was overruled, his right to an impartial jury was denied, his two confessions and state's Exhibit No. 17 (a photograph of teethmarks on the victim's left breast) were erroneously admitted into evidence, and the award of the death penalty was motivated by prejudice and passion.

1. For purpose of argument, appellant combines enumerations of error one and two into a single contention: the trial court erred in overruling his motion for change of venue based upon prejudicial pretrial publicity since the consequence of such denial was to deprive appellant of his right to trial by an impartial jury. Appellant's motion was supported by the introduction into evidence of 26 articles published by Columbus' two local newspapers between July 15, 1977, the date of commission of the crime, and August 23, 1977, twelve days after appellant had been arrested. The record contains no article published during the two and two-thirds months immediately preceding appellant's trial on Nov. 15, 1977; however, the transcript reflects that one article was published on Nov. 14, 1977, the very eve of the trial, wherein it was restated that appellant had confessed to the indicated crimes (the original statement, published August 14, 1977, also quoted from the text of the confession). Additional facts will be noted as necessary to the discussion.

The Sixth Amendment to the U. S. Constitution (U. S. Const. Amend. VI) combines with Code Ann. § 2-111 (Ga. Const. Art. I, Sec. I, Par. XI) to assure that every person charged with offending the laws of this state shall have a public and speedy trial by an *impartial* jury.

Appellate courts must independently review the relevant trial court record in each case to insure compliance with these constitutional dictates. Sheppard v. Maxwell, 384 U. S. 333, 362 (1966); United States v. McNally, 485 F2d 398, 403 (8th Cir. 1973), cert. den., 415 U. S. 978 (1974); United States v. Yeager, 472 F2d 229,

239 (3rd Cir. 1973).

We note that, under the Sixth Amendment, in order for an appellant to establish the denial of his right to an impartial jury, he must show either (a) *actual* juror partiality or (b) circumstances *inherently prejudicial* to that right. Murphy v. Florida, 421 U. S. 794, 803 (1974); *Street v. State,* 237 Ga. 307, 311 (227 SE2d 750) (1976), vacated on other grounds, 429 U. S. 995 (1976).

(a) The United States Supreme Court has defined actual juror partiality as follows:

"It is not required, however, that jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U. S. 717, 722 (1961). Accord, *Coleman v. State,* 237 Ga. 84, 87 (226 SE2d 911) (1976), cert. den., 431 U. S. 909 (1977).

In this present case, all twelve selected jurors testified on voir dire that they were without a fixed opinion as to appellant's guilt or innocence. The appellant protests, however, that this formal declaration of impartiality was impeached, in the case of one juror, by her admissions that she held an "undecided" opinion as to the appellant's guilt based upon newspaper accounts of the Columbus police department's certainty that the appellant was Miss Galloway's assailant. This same juror, however, testified in explanation of the above that she understood the police made mistakes and that her "undecided" opinion would not preclude her from deciding appellant's guilt or innocence solely on the evidence presented at trial.

(b) Circumstances inherently prejudicial to the appellant's right to an impartial jury can impeach a juror's declaration of impartiality. As evidence of the presence of such circumstances in the present case, the appellant notes that 7 of the 12 selected jurors had knowledge of the crime, and that 5 of the 12 knew appellant had confessed (though only 1 of these 5 acknowledged even the possibility of recalling the details of the confession.) The appellant also notes that 2 of the twelve selected jurors were acquainted with the victim's family—one by reputation, the other by a single introduction several years prior to trial.

We are aware that a juror's extrajudicial knowledge regarding an appellant's present crime represents a serious potential for prejudice to that appellant's right to an impartial jury. However, such potential can be discounted under the Sixth Amendment if review of the pretrial publicity and total voir dire fails to demonstrate that the "totality of the circumstances" were inherently prejudicial. Murphy v. Florida, supra.

We have held that a juror's extrajudicial knowledge of the victim, even when manifested by attendance at the victim's funeral, did not impeach per se that juror's declaration of impartiality. *Coleman v. State,* supra. Accordingly, we hold that, while a juror's extrajudicial knowledge regarding an appellant's crime, confession, and victim does indeed represent a serious potential for prejudice to that appellant's right to an impartial jury, such potential can be discounted under the Sixth Amendment if review of the pretrial publicity and total voir dire fail to demonstrate that "the totality of the circumstances" were inherently prejudicial.

In review of the pretrial publicity attending his case the appellant stresses, in addition to the sheer number of newspaper publications (26), the publication of parts of his confession, after the confession had been read into the public record at the appellant's preliminary hearing. The appellant further notes the emotionalism of the coverage, citing, in particular, one headline which read "Congregation Weeps For Its Slain Young Organist", one editorial which commented that the murder of Miss Galloway had struck an especially responsive cord in the

community, and, one photograph of the appellant captioned by the statement of the district attorney that he intended to seek the death penalty at trial.

In Stroble v. California, 343 U. S. 181 (1951), the United States Supreme Court considered a pattern of pretrial publicity strikingly similar to the one in the present case. In upholding Stroble's conviction, the court stated: "He (the defendant) asks the court simply to read those stories and then to declare, over the contrary finding of 2 state courts, that they *necessarily* deprived him of due process. That we cannot do, at least where, as here, *the inflammatory newspaper accounts* appeared approximately *6 wks. before the beginning of petitioner's* trial, and there is no affirmative showing that any community prejudice ever existed or in any way affected the deliberation of the jury. *It is also significant that* in this case *the confession* which was one of the most prominent features of the newspaper accounts *was made voluntarily and was introduced in evidence at the trial itself."* (Emphasis supplied.) Thus after observing the absence of any evidence of actual juror prejudice, the United States Supreme Court noted the remoteness in time between publicity and trial and the eventual admission of the prejudicial information into evidence as support for its refusal to hold that the appellant's right to an impartial jury had been presumptively violated. See Nebraska Press Assn. v. Stuart, 427 U. S. 539, 554 (1975); United States v. Mancusi, 445 F2d 613, 618 (2nd Cir. 1971). The same set of circumstances exists in the present case. There is an absence of any evidence of actual juror partiality. (See Part II, Division 1 (a) of this opinion.) Further, all but one of the 26 articles were published 2 1/2 months before the appellant's trial and at trial the appellant's confessions were found to be voluntary and admitted into evidence. Accordingly, this court concludes that the pretrial publicity surrounding the appellant's trial did not constitute a circumstance inherently prejudicial to the appellant's Sixth Amendment right to an impartial jury.

This court is not unaware of Rideau v. Louisiana, 373 U. S. 723 (1963), wherein the United States Supreme Court found that the circumstance of a confession,

televised 3 times approximately 2 months prior to the trial and never admitted into evidence, did demonstrate inherent prejudice to the appellant's right to an impartial jury. That same court, however, in Nebraska Press Assn. v. Stuart, supra, made clear the continued vitality of Stroble, and the limited holding of Rideau. In order to invoke the Sixth Amendment's presumption of juror partiality on the ground of inherently prejudicial pretrial publicity, an appellant must show "a trial atmosphere *utterly corrupted* by press coverage." Murphy, supra, at 798. (Emphasis supplied.) Given the facts before this court, the present appellant has failed his burden.

Regarding review of the total voir dire, the United States Supreme Court suggested in Murphy that corroboration for a court's belief the pretrial publicity had not been inherently prejudicial could be found in the percentage of prospective jurors excused for partiality regarding the appellant's guilt. In the present case, only 4% (3 out of 75) of the prospective jurors were excused for partiality regarding the defendant's guilt. This very low percentage firmly reinforces our earlier conclusion that the pretrial publicity surrounding the appellant's case did not create a community bias inherently prejudicial to the appellant's right to an impartial jury. See *Coleman,* supra (49% dismissal rate — 38 out of 77 — held to corroborate absence of inherently prejudicial community bias); *Butler v. State,* 231 Ga. 276, 277 (201 SE2d 448) (1973) (36% dismissal rate — 28 out of 77 — held to corroborate absence of inherently prejudicial community bias); cf. Murphy, supra, at 803 (62% dismissal rate — 268 out of 430 — held to corroborate the presence of actual juror partiality).

We note, in regard to the credibility of the above low percentage, that the trial court in this case conducted the individual voir dire of each prospective juror out of the presence of the others, and thereby eliminated the danger that sincere jurors might be influenced to misstate their true feelings if asked, in the presence of their peers, to acknowledge their bias.

In conclusion, we hold that the 2 1/2 month period between the publicity and the trial, the low level of community bias as reflected in the total voir dire, and the admission into evidence of the defendant's confessions

permit this court to discount the potential for prejudice admittedly present in the extrajudicial knowledge of the selected jurors in this case, and to find that the "totality of circumstances" surrounding the appellant's trial were not inherently prejudicial to the appellant's right to an impartial jury. These two enumerations are without merit.[1]

2. When an appellant objects to the admission into evidence of his confession, the state must prove, by a preponderance of the evidence, Lego v. Twomey, 404 U. S. 477, 489 (1972); United States v. Watson, 469 F2d 362, 364 (5th Cir. 1972); *High v. State,* 233 Ga. 153, 154 (210 SE2d 673) (1974), that the confession was voluntary, and, if the confession is the product of a custodial interrogation by officers of the government, that the confession was preceded by the appellant's knowing and voluntary waiver of his Miranda rights. Miranda v. Arizona, 384 U. S. 436, 444 (1966); *Goodwin v. State,* 236 Ga. 339, 342 (223 SE2d 703) (1976).

On appellate review, factual and credibility determinations by the trial court must be accepted unless such determinations are clearly erroneous. United States v. Watson, supra; *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974).

It is the duty of this court to independently review the evidence to determine whether the state has carried its burden of proving the admissibility of appellant's

---

[1]Appellant, in his brief to this court, mentions the presence of television in the courtroom. We note here that the mere fact of a televised trial does not constitute evidence that the pretrial publicity surrounding the defendant's trial, which we have above held insufficient to sustain a finding that the appellant was denied his right to an impartial jury, was joined by media theatrics sufficient to convert the totality of courtroom circumstances into a "circus," and thereby deprive the appellant of his right to courtroom calm as enunciated by the United States Supreme Court in Sheppard v. Maxwell, 384 U. S. 333 (1966) and Estes v. Texas, 381 U. S. 532 (1964). We also note that appellant consented to the television coverage of his trial.

confession by a preponderance of the evidence. United States v. Watson, supra. Having done so, we firmly conclude that the state has carried its burden. See *Hurt v. State,* 239 Ga. 665, 669 (238 SE2d 542) (1977); *Stevens v. State,* 222 Ga. 603 (151 SE2d 127) (1966). See generally West v. United States, 399 F2d 467, 469 (5th Cir. 1968), cert. den., 393 U. S. 1102 (1969); *Riley v. State,* 237 Ga. 124, 128 (226 SE2d 922) (1976).

3. Dr. Joe Martin Webber testified at trial that he had observed a series of teethmarks on Miss Galloway's left breast during performance of the autopsy on July 16, 1977. He was shown the state's original Exhibit 17 and asked if he could recognize from it the teethmarks he had observed during the autopsy. After responding negatively, Dr. Webber produced a photograph which he testified was a true and correct representation of Miss Galloway's breast area at the time he had taken the photograph. Following substitution of the doctor's photograph as the new state's Exhibit 17, said exhibit was admitted into evidence over the following objections by the defendant: first, that the photograph was irrelevant by virtue of Dr. Webber's failure to testify when the marks had been made, whether they were inflicted violently, or whether they were inflicted by man, woman, or child, much less this particular defendant; and, second, that given the photograph's cumulative evidentiary value (Dr. Webber having already testified to what the photograph showed), its probative worth was so outweighed by its probative danger that its exclusion from the jury was demanded.

Georgia law provides that a photograph, relevant to a material fact, is admissible in evidence if authenticated and if possessed of a probative value not substantially outweighed by probative danger. *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974); see *Shaw v. State,* 241 Ga. 308, 311 (245 SE2d 262) (1978). Further, the above determinations are assigned to the sound discretion of the trial judge and will not be disturbed on appeal except for abuse of that discretion. *Thornton v. Thornton,* 232 Ga. 666, 667 (208 SE2d 557) (1974); *J. D. Jewell, Inc. v. Hancock,* 226 Ga. 480, 487 (175 SE2d 847) (1970).

In this case, appellant was indicted for the crime of

rape, which Georgia law defines as carnal knowledge of a female, forcibly and against her will. Thus, a material fact in issue before the jury was whether the defendant had achieved carnal knowledge of Miss Galloway *by force.* We hold the trial judge did not abuse his discretion in ruling that state's Exhibit 17, depicting the presence of teethmarks on Miss Galloway's left breast, rendered the material fact of force more probable than it would have been without the evidence.

In objecting to the photograph because Dr. Webber did not testify when the teethmarks had been made or whether they had been inflicted by a man, woman, or child, appellant seems to demand, as a condition to admissibility, that the photograph be relevant to *who* raped Miss Galloway. Relevancy is the tendency to establish *any* material fact. In objecting that Dr. Webber did not state whether the teethmarks were inflicted violently, defendant raises a point that would be more persuasive if his objection were to either the sufficiency of the photograph, a question of law for the court, or the weight of the photograph, a question of persuasion for the jury. Green, Georgia Law of Evidence 194-196, § 82 (1957). It is not persuasive in an objection to the photograph's relevancy.

The trial judge in the case before us did not abuse his discretion in admitting the photograph. *Lamb v. State,* 241 Ga. 10, 12 (243 SE2d 59) (1978); *Reddish v. State,* 238 Ga. 136, 139 (231 SE2d 737) (1977).

### III. Sentence Review.

4. In reviewing the charge of the court in the sentencing phase of the trial relating to circumstances in mitigation and aggravation, we conclude that this portion of the charge clearly meets the criteria laid down in *Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1978); and *Spivey v. State,* 241 Ga. 477 (2) (246 SE2d 288) (1978), cert. den. — U. S. — (99 SC 642, 58 LE2d 699).

5. A review of the evidence during the sentencing phase of the trial shows that the defendant called his mother and two sisters as witnesses in an attempt to show mitigating circumstances in his behalf. During the

testimony of these witnesses, the district attorney made numerous objections based on hearsay, irrelevancy, conclusion of the witness, etc., most of which were sustained by the court. In response to defense counsel's statement that "I thought the rules were much more liberal on the sentencing phase," the court replied " . . . its got to be admissible evidence." The court overruled one objection and told counsel to "keep her within reasonable bounds."

We find no error under the facts of this case since the witnesses, despite the objections which were sustained, were able to convey to the jury the circumstances concerning the defendant's premature birth, being raised in a broken home, severely beaten and mistreated by a stepfather, his early offenses as a juvenile, and other matters which the jury might consider as mitigating circumstances.

This court is of the opinion that evidence as to mitigation should not necessarily be confined to the strict rules of evidence. The trial court should exercise a broad discretion in allowing *any* evidence reasonably tending toward mitigation. Of course the court is authorized to hold witnesses "within reasonable bounds," as was done in this case. See *Collier v. State,* 244 Ga. 553 (1979).

6. Appellant's final enumeration of error raises the same issue as the first third of this court's mandatory death sentence review as outlined in Code Ann. § 27-2537 (c) (1-3) (Ga. L. 1973, p. 159); accordingly, it shall be incorporated into this section's fulfillment of the cited statutory duty.

First, we conclude that the sentence of death imposed in this case for the crime of murder was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Secondly, we conclude that the statutory aggravating circumstances found by the jury (murder while the offender was engaged in the commission of rape and armed robbery; and murder outrageously or wantonly vile, horrible or inhuman in that it involved depravity of mind to the victim (sic)) were supported by sufficient evidence. (Regarding rape and armed robbery, see Part I of this opinion; regarding depravity of mind).

See *Johnson v. State,* 242 Ga. 649, 656 (250 SE2d 394) (1978).

Thirdly, in reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed and we find that the cases listed in the appendix support affirmance of the death penalty. This case involves an absolutely unprovoked murder while the appellant was in the commission of armed robbery, kidnapping, and rape. William Anthony Brooks' sentence to death is neither excessive nor disproportionate to the penalty imposed in similar crimes considering the crime and the appellant.

*Judgment affirmed. All the Justices concur, except as to Division 6, Hill, J., concurs in the judgment only.*

ARGUED MAY 15, 1979 — DECIDED OCTOBER 30, 1979.

*William S. Cain, Jr.,* for appellant.

*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Morgan v. State,* 241 Ga. 485 (246 SE2d 198) (1978); *Drake v. State,* 241 Ga. 583 (247 SE2d 57) (1978).