A89A0336. LUBIANO v. THE STATE.
A89A0337. MURRAY v. THE STATE.

(384 SE2d 410)

McMurray, Presiding Judge.

Defendants Lubiano and Murray were jointly indicted for aggravated assault upon a peace officer in that they "did unlawfully make an assault upon the person of Georgia State Trooper First Class Mickey Little, knowing said person was a peace officer engaged in the performance of his official duties, said assault being with boot-clad feet and a .357 magnum revolver, objects which, when used offensively against a person actually do result in serious bodily injury, by kicking and striking said person in the head . . . ." In a second count, defendants were jointly indicted for aggravated assault in that they "did unlawfully make an assault upon the person of William Jackson Tubb, with a .357 magnum revolver, a deadly weapon, by pointing said weapon at said person. . . ." Defendant Murray was charged in a separate count with being a recidivist under OCGA § 17-10-7. The evidence adduced at a joint jury trial revealed the following:

At about 11:00 in the morning on February 9, 1988, Trooper Mickey Little of the Georgia State Patrol observed a "black-over-white" Lincoln Continental traveling north on Interstate Highway 75 with what then appeared to be an improper out-of-state license plate. Trooper Little stopped the vehicle and discovered that defendant Lubiano was the driver and that defendant Murray was the passenger. Trooper Little separated defendants, made inquiry of their itinerary and received conflicting accounts of defendants' mission. The trooper then made a further investigation of the suspect vehicle and later "asked [defendant] Lubiano for permission to look in the trunk [of the Lincoln]." Defendant Lubiano consented and, as Trooper Little was searching, he discovered a package which appeared to be the same type of packaging usually involved in wrapping cocaine and marijuana. Trooper Little placed his hand on the suspect package and defendant Lubiano struck the officer "across the shoulder . . . ." "At that point[, Trooper Little and defendant Lubiano] fell to the ground and rolled to the bottom of a small embankment. [Trooper Little] was struck approximately two more times in the process of rolling down

the hill, in the face. When [the men] reached the bottom of the hill, [Trooper Little] ended up on top of [defendant] Lubiano and was trying to subdue [defendant Lubiano] at that time. The next thing [Trooper Little remembers] was a sharp blow to the left-hand side area of [his] head . . ." and was momentarily "knocked" unconscious. When the trooper awakened, he was lying on his stomach "in a face-down position." Defendant Murray ordered the trooper to surrender his handgun. When the officer refused, he was "struck on the rear portion of [his] head and, again, . . . knocked . . . unconscious."

William Jackson Tubb, a "tractor/trailer" operator for "Steeves and Sons Door Company," was traveling by the scene and "observed [defendant Murray and defendant Lubiano] over in the ditch with [Trooper Little] down on the ground, face down." Tubb stopped, "got out of [his] truck[,] got a tire iron out of the tool box on the truck, [and ran] back to the scene, where [he] observed [defendant Lubiano] kicking the State Trooper [and defendant Murray] beating [the trooper] with his revolver, beating him in the head, and just . . . brutalizing the State Trooper . . . ." Tubb ordered the defendants to stop, but defendant Murray "turned around and pointed the State Trooper's revolver at [Tubb] with the hammer back and . . . told [Tubb] to 'get the [f— —k] out of there.'" Tubb "raised [his] hands and dropped [his tire iron] and [pleaded with defendant Murray] not to kill [him] and not to kill the Officer." Defendant Murray again ordered Tubb to leave the scene. Tubb complied, and went "to the State Patrol car to look for a shotgun or any kind of weapon." Defendant Murray then "threw the revolver over into some honeysuckle vines" and defendants then abandoned Trooper Little and fled in the Lincoln Continental. The jury found defendants guilty of aggravated assault upon Trooper Little and aggravated assault upon William Jackson Tubb. Defendant Murray was sentenced to serve two consecutive twenty-year terms under the provisions of OCGA § 17-10-7. Defendant Lubiano was sentenced to serve two consecutive twenty-year terms. After the denial of their motions for new trial, defendant Lubiano appealed in Court of Appeals Case No. A89A0336 and defendant Murray appealed in Court of Appeals Case No. A89A0337. *Held*:

1. In his first enumeration of error, defendant Lubiano contends that the evidence was insufficient to support his convictions.

*(a) Aggravated Assault Upon a Peace Officer (Count 1)*

Defendant Lubiano argues that the State failed to prove, beyond a reasonable doubt, that he assaulted Trooper Little in the manner alleged in the indictment, i.e., "with boot-clad feet and a .357 magnum revolver, objects which, when used offensively against a person actually do result in serious bodily injury, by kicking and striking a person in the head . . . ." More specifically, defendant Lubiano argues that the State failed to prove that he assaulted the trooper with

both his " 'boot-clad feet *and* a .357 magnum revolver.' "

" 'When an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment makes a prima facie case for jury determination as to guilt or innocence. See *Jones v. State*, 75 Ga. App. 610 (4), 615 (44 SE2d 174); *Leverenz v. State*, 140 Ga. App. 632, 634 (231 SE2d 513).' *Henry v. State*, 154 Ga. App. 120 (1) (267 SE2d 653)." *Rucker v. State*, 177 Ga. App. 779, 781 (3) (341 SE2d 228). In view of the conjunctive form of the indictment in the case sub judice, it was not incumbent upon the State to prove that defendant Lubiano assaulted Trooper Little with both his feet and a revolver. Evidence showing that defendant Lubiano mercilessly "kicked" Trooper Little in the head, causing the law enforcement officer serious bodily injury, was sufficient to authorize the jury's finding that defendant Lubiano was guilty, beyond a reasonable doubt, of aggravated assault upon a peace officer as was charged in the indictment. OCGA § 16-5-21 (a) (2) (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). See *Adams v. State*, 255 Ga. 356 (338 SE2d 860).

*(b) Aggravated Assault (Count 2)*

Next, defendant Lubiano "challenges this Court and the State to point to any evidence . . ." showing that he " 'did unlawfully make an assault upon the person of William Jackson Tubb with a .357 Magnum revolver, a deadly weapon, by pointing said weapon at said person.' "

" 'Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if he: . . . (3) (i)ntentionally aids or abets in the commission of the crime . . .' OCGA § 16-2-20 (Code Ann. § 26-801)." *Carter v. State*, 168 Ga. App. 177 (3), 178 (308 SE2d 438).

Although defendant Lubiano did not point Trooper Little's ".357 magnum revolver" at William Jackson Tubb and order him to leave the scene, he assisted defendant Murray in obtaining the trooper's weapon and he took advantage of the aggravated assault upon William Jackson Tubb to flee the scene. This evidence, and other evidence showing defendants' joint objective of avoiding apprehension, was sufficient to authorize the jury's finding that defendant Lubiano was guilty, beyond a reasonable doubt, of jointly assaulting William Jackson Tubb with a deadly weapon, as alleged in the indictment. OCGA § 16-5-21 (a) (2); *Jackson v. Virginia*, 443 U. S. 307, supra; *August v. State*, 180 Ga. App. 510, 511 (1) (349 SE2d 532). This enumeration is without merit.

2. Defendant Lubiano, in his second enumeration of error, contends "[t]he trial court erred in refusing to give [his] request to

charge concerning deadly weapons per se[. He also contends that the trial court's] recharge to the jury was erroneous and only served to confuse the jury."

(a) First, defendant Lubiano argues that "[t]he trial court erred in failing to give [his] request to charge concerning feet as not being deadly weapons per se."

Defendant Lubiano's eighth request to charge provides as follows: "A person's *arms*, if and when used in making an assault upon another person, are not *deadly weapons* per se, but may or may not be *deadly weapons*, depending upon the manner in which they are used, and the circumstances of the case. Whether an instrument or a part of a person's body does or does not have the characteristics of a *deadly weapon*, allegedly used in making an assault, may be inferred from the nature and extent of the injury, if any, inflicted upon the person allegedly attacked. Whether or not, under all the facts and circumstances of this case, the *arms* of the defendant, alleged in this bill of indictment to have been used in making an assault upon the alleged victim, did, in fact, constitute *deadly weapons* as alleged, is a matter to be determined by the jury from the evidence in this case." (Emphasis supplied.)[1]

" ' "A request to charge should in itself be correct, and even perfect; otherwise the refusal to give it will not be cause for a new trial." (Cit.) " 'A request to charge the jury must be legal, apt, and precisely adjusted to some principle involved in the case, and be authorized by the evidence.' (Cit.)" (Cits.)' *Kessel v. State*, 236 Ga. 373, 374 (2) (223 SE2d 811) (1976). See also *Seawright v. State*, 172 Ga. App. 517 (6) (323 SE2d 704) (1984)." *Daniels v. State*, 184 Ga. App. 689 (1), 690 (362 SE2d 775).

In the case sub judice, the indictment did not allege that defendant Lubiano assaulted Trooper Little with his "arms," nor was it alleged that defendant Lubiano's feet were "deadly weapons." It was alleged and proved, beyond a reasonable doubt, that defendant Lubiano assaulted the trooper with his "feet" and that defendant Lubiano's feet were "objects which, when used offensively against a person actually do result in serious bodily injury . . . ." Consequently, since defendant Lubiano's eighth request to charge was not adjusted to the facts and circumstances of the case sub judice, there was no error in

---

[1] During the charge conference, defendant Lubiano's defense counsel stated that he "modified the substance of [this] charge [by deleting the words,] 'A person's arms' — and [substituting] 'fists and feet' to conform to the evidence . . . ." Defendant Lubiano's defense counsel also stated that he "modified" his request to charge "to say . . . 'offensive object,' " instead of "deadly weapon." These verbal "modifications" amounted to an oral request to charge which the trial court was not required to give. Defendant Lubiano should have made a timely written substituted request, incorporating the "modifications" and deleting any formerly submitted undesired phraseology, for the trial court's consideration.

failing to give this instruction.

(b) Next, defendant Lubiano contends "[t]he trial court response and recharge after a question was propounded by the jury was erroneous and confusing."

During deliberations, the jury "sent the Court the following question . . . : 'In Count One of the Indictment it says he beat with boot-clad feet and a .357 magnum revolver. In order to be guilty on this Count or not guilty, does it matter whether or not the Officer was struck with both the gun and boot-clad feet or would striking the Officer with boot-clad feet alone constitute the crime of aggravated assault on a peace officer?' "

In response, the trial court instructed the jury "that, where the Indictment alleges an aggravated assault in two different manners, in one Count where it's alleged that it was done in two ways, if the proof is beyond a reasonable doubt that in either of the ways it was done, then that would be sufficient to uphold a verdict of guilty. Now, I charge you, of course, that a person commits aggravated assault when he assaults another person with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. You would look to the evidence in the case and see whether or not that was established beyond a reasonable doubt or not."

Defendant Lubiano argues that this instruction was "confusing" because the trial court "failed to advise the jury of its duties in determining *if* 'boot-clad feet' . . . were 'offensive' weapons as to be contemplated by the statute in issue." He also argues that the instruction was "erroneous" because it allowed him "to be convicted upon a charge not made—and upon evidence not before the trial jury." These arguments are without merit.

Defendant Lubiano was indicted under OCGA § 16-5-21 (1) (2), in that he did assault Trooper Little with his feet, causing the trooper "serious bodily injury." The evidence adduced at trial supported this allegation by proof beyond a reasonable doubt. See Division 1 (a) of this opinion. Further, the trial court's response accurately informed the jury that an object is an " 'offensive' weapon" when it "is likely to or actually does result in serious bodily injury," as contemplated by OCGA § 16-5-21 (a) (2).

(c) In his second enumeration of error, defendant Murray challenges the instructions reflected in Division 2 (b) of this opinion, arguing that this "recharge . . . gave rise to a fatal variance."

We fail to understand how the above instruction gave rise to a "variance." Nonetheless, we find that the evidence adduced at trial was more than sufficient to authorize the jury's finding that defendant Murray is guilty, beyond a reasonable doubt, of aggravated assault upon a peace officer, as was charged in Count 1 of the indict-

ment. *Jackson v. Virginia*, 443 U. S. 307, supra. Further, it is sufficient to say that the trial court's instruction was responsive to the jury's inquiry and was an accurate statement of law. *Rucker v. State*, 177 Ga. App. 779, 781 (3), supra; OCGA § 16-5-21 (a) (2).

3. In his third enumeration, defendant Lubiano contends that the trial court erred in charging the jury upon the issue of conspiracy, arguing that he was not indicted for conspiracy to commit aggravated assault upon Trooper Little or Mr. Tubb. Since "the evidence tended to show [that defendants] acted in concert, conspiracy may be proved though not alleged in the indictment. *Greene v. State*, 155 Ga. App. 222, 224 (270 SE2d 386); *Anderson v. State*, 153 Ga. App. 401, 403 (265 SE2d 299); *Simpkins v. State*, 149 Ga. App. 763, 768 (256 SE2d 63)." *Alexander v. State*, 186 Ga. App. 787, 789 (3) (368 SE2d 550). The trial court did not err in charging the jury on the issue of conspiracy.

4. Defendant Lubiano challenges in his fourth enumeration and defendant Murray challenges in his first enumeration the trial court's decision to allow the jury to view a videotape recording of the crime scene. Defendants contend that the adverse prejudicial impact of the videotape outweighed its probative value and argue that the video recording should have been excluded from evidence. We do not agree.

"The videotape [showed the crime scene shortly after the incident and] clearly was relevant. There was no abuse of discretion in the court's ruling. *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987); *Jones v. State*, 250 Ga. 498 (3) (299 SE2d 549) (1983)." *Foster v. State*, 258 Ga. 736, 740 (7) (374 SE2d 188).

5. In his fifth enumeration, defendant Lubiano contends "[he] was denied a fair and impartial jury when the trial court denied his Motion for Change of Venue."

" 'The decision to grant a change of venue lies within the discretion of the trial court, and its discretion will not be disturbed absent an abuse of that discretion. *Allen v. State*, 235 Ga. 709, 713 (221 SE2d 405) (1975); *Jarrell v. State*, 234 Ga. 410, 415 (216 SE2d 258) (1975).' *Patterson v. State*, 239 Ga. 409, 418 (5) (238 SE2d 2) (1977)." *Chancey v. State*, 256 Ga. 415, 429 (5), 430 (349 SE2d 717). "In order to prevail on a motion for change of venue, (1) the defendant must show such extensive and prejudicial pretrial publicity that the county in which the crime occurred *presumptively* is incapable of providing a fair trial to the defendant, or (2) he must establish from the jury selection process itself — the voir dire examination and qualification of prospective jurors — that a change of venue is necessary. *Devier v. State*, 253 Ga. 604, 608-609 (323 SE2d 150) (1984)." *Lee v. State*, 258 Ga. 82, 86 (9) (365 SE2d 99).

In the case sub judice, defendant Lubiano argues that extensive pretrial publicity prevented him from receiving a fair trial. In support

of his motion, defendant Lubiano filed several television, radio and newspaper reports covering the assault upon Trooper Little. He also included a resolution of the House of Representatives of the State of Georgia, expressing "their deepest and most profound appreciation to Mr. William Jackson Tubb for his outstanding heroism" in assisting Trooper Little; a printed advertisement, compelling television viewers to observe an Atlanta area television station's report on the Georgia State Patrol's drug eradication efforts on Georgia's highways and a videotaped copy of that report. All of this information was disseminated to the public within six weeks of defendant Lubiano's trial.

A review of this material shows that some of the information did not relate to the assault on Trooper Little and that some of it did not mention defendant Lubiano's involvement in the crime. However, there is no question that the media portrayed the assault upon Trooper Little as a drug related crime and that the pretrial publicity was ongoing, adverse and widespread. " 'However, widespread or even adverse publicity is not in itself grounds for a change of venue. *United States v. McNally*, 485 F2d 398, 403 (8th Cir. 1973), cert. denied 415 U. S. 978 (1974); *Mooney v. State*, [243 Ga. 373, 387 (254 SE2d 337)]. On appeal, the impact of media publicity is evaluated by various factors, such as the size of the community and the extent of media coverage (number of articles and their circulation); whether it related to the discovery of the crime (e.g., facts regarding the victim) or to the apprehension or interrogation of the defendant (and whether any publicized confession was admitted at trial); the prominence and content of the reports (e.g., facts vs. speculation and emotionalism, and the accuracy and admission into evidence of those facts); and the time interval between the publicity and the trial. *Stroble v. California*, 343 U. S. 181, 191-195 (72 SC 599, 96 LE 872) (1952); *Mooney v. State*, supra, 243 Ga. at 385-387; *Brooks v. State*, 244 Ga. 574, 578-581 (261 SE2d 379) (1979). . . .' *Kesler v. State*, 249 Ga. 462, 471-472 (7) (291 SE2d 497) (1982)." *Chancey v. State*, 256 Ga. 415, 429 (5), supra.

In the case sub judice, there is no admissible evidence showing the size of the community affected by the pretrial publicity; there were no publicized admissions or confessions of defendants and much of the information reported by the media was accurate, supported by a volume of evidence at trial. For example, there were drugs associated with the assault upon Trooper Little; the trooper was mercilessly beaten; there are a large number of illegal drug arrests on Interstate Highway 75 and the drug related arrests on Interstate 75 are the product of the Georgia State Patrol's drug eradication effort. Finally, the characterization of William Jackson Tubb as a "hero" is accurate. He selflessly assisted a wounded state trooper on the side of the roadway and risked his life in the process. From this perspective, we can-

not say that the pretrial publicity was so extensive and prejudicial as to require a change of venue. Consequently, the trial court did not abuse its discretion in denying defendant Lubiano's motion for change of venue. See *Chancey v. State*, 256 Ga. 415, 429 (5), supra.

6. Next, defendant Lubiano contends "[t]he trial court committed prejudicial error when it refused to hold a hearing on [his] Motion to Suppress."

The record shows that defendant Lubiano filed a motion to suppress evidence several weeks before trial. At a hearing, the trial court denied this motion. Defendant Lubiano now admits that he failed to set forth "any facts supporting [his] allegations that evidence had been illegally seized by the State." Consequently, the trial court did not err in denying this motion to suppress. OCGA § 17-5-30; *Mosier v. State*, 160 Ga. App. 415 (2) (287 SE2d 357).

During the morning on the first day of trial, defendant Lubiano filed a "RENEWED MOTION TO SUPPRESS," alleging facts which were not included in his first motion to suppress. After a jury was selected, the trial court conducted a hearing and denied this motion to suppress, finding it untimely filed.

"Although there is no time limit set out in the statute for the filing of a motion to suppress, the statute has been interpreted as requiring that the motion be made before the issue is joined. *Perryman v. State*, 149 Ga. App. 54 (253 SE2d 444) (1979); *State v. Shead*, 160 Ga. App. 260 (286 SE2d 767) (1981). [The Supreme Court of Georgia has interpreted] this to mean before the defendant enters his written plea." *Waller v. State*, 251 Ga. 124, 127 (303 SE2d 437), reversed on other grounds in *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31). In the case sub judice, defendant Lubiano entered his written plea on February 18, 1988, over a month prior to trial. Consequently, the trial court did not err in denying defendant Lubiano's "RENEWED MOTION TO SUPPRESS" on the grounds that it was untimely filed. See *Holton v. State*, 243 Ga. 312, 316 (3) (253 SE2d 736). Compare *Collier v. State*, 171 Ga. App. 214 (319 SE2d 51).

7. In his final enumeration of error, defendant Lubiano contends the trial court erred in restricting his voir dire, foreclosing his inquiry "into the [prospective] jurors' partiality or biases caused by pretrial publicity."

Defendant Lubiano's attorney asked a prospective juror whether the juror's opinion, influenced by pretrial publicity, would require defendant Lubiano to prove that he was not guilty of escaping a police "dragnet" and of doing "something" which caused him to flee authorities. The prospective juror answered affirmatively and the trial court inquired of the prospective juror as follows: "THE COURT: Well, before we go on . . . the law presumes the defendants to be innocent; places the burden on the State to prove their guilt beyond a reasona-

ble doubt. Can you give them the presumption of innocence and require the State to do that? [PROSPECTIVE JUROR]: I think so." The following then transpired:

"THE COURT: All right. Is there anybody on the jury who cannot, regardless if you have some opinion from the media? Can you set that aside and realize that the accused are presumed innocent by law and that the State has to come in and bring some evidence to convince you beyond a reasonable doubt? Is there anybody that can't do that? Any problem with doing that with any juror? (No response.)

"THE COURT: All right. Let's don't go into those questions again of that sort . . . .

"[DEFENDANT LUBIANO'S ATTORNEY]: Your Honor, of course, I'm going to except to that.

"THE COURT: All right, you can except to it, but I think we've made that abundantly clear and they've responded.

"[DEFENDANT LUBIANO'S ATTORNEY]: Am I to understand that I cannot ask a potential juror whether or not that they have an opinion and whether or not they can set it aside? I think I'm entitled —

"THE COURT: You cannot ask each juror from here on out whether or not these defendants are going to have to come forward with some evidence to prove that they're not guilty, since all of the jurors have just told me, by their failure to respond, that they can all require the State to prove that guilt beyond a reasonable doubt. Therefore, I don't see any point in us going through that question over and over again.

"[DEFENDANT LUBIANO'S ATTORNEY]: May I ask whether or not, because of what they've read or heard, that they have an opinion based upon that, whether or not they can set it aside? They believe that, because Mr. Lubiano has been arrested and is on trial, that he has been involved in this and that the State may not have to overcome the burden that the Court requires it.

"THE COURT: I've already asked them and they've already said that they don't have any opinion of their guilt or innocence. If I'm wrong about that, Ladies and Gentlemen, correct me now and raise your hand. But I understood, from your answer to my question, that you had no opinion of their guilt or innocence and you understand the State has to prove their guilt. Is there any question about that by anybody? (No response.)

"THE COURT: All right. Let's don't go into those things over and over and over again because I think we've made that clear and I think they've responded accordingly."

"The conduct of voir dire is within the sound discretion of the trial court, and this discretion will not be disturbed on appeal unless manifestly abused. *Messer v. State*, 247 Ga. 316, 323 (5) (276 SE2d

15) (1981)." *Blanco v. State*, 185 Ga. App. 535 (1) (364 SE2d 903). In the case sub judice, we find no abuse in the trial court's direction of defendant Lubiano's attorney's conduct during voir dire. The trial court's inquiry and special instructions were sufficient to allow the discovery of bias, prejudice and prior opinion. See *Curry v. State*, 255 Ga. 215, 218 (2b) (336 SE2d 762).

*Judgments affirmed. Beasley, J., concurs. Carley, C. J., concurs in Divisions 1, 2, 3, 4, 5, 6 and in the judgments.*

Decided June 26, 1989 —
Rehearing denied July 13, 1989.

*Bruce S. Harvey*, for appellant (case no. A89A0336).
*Ralph J. Hunstein*, for appellant (case no. A89A0337).
*Jack O. Partain III*, District Attorney, *Steven M. Harrison*, Assistant District Attorney, for appellee.