A90A0865. PEEBLES v. THE STATE.
(395 SE2d 640)

McMurray, Presiding Judge.

Defendant was tried before a jury and found guilty on five counts of burglary and one count of theft by taking. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant contends in his first enumeration of error that the trial court erred in admitting his two custodial statements. The evidence adduced at a hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908), revealed the following:

On December 16, 1984, defendant was "arrested and taken to the Fannin County Sheriff's office. . . ." Defendant was there interviewed by Special Agent Peter Connelly of the Federal Bureau of Investigation ("FBI") and Special Agent Jimmy Berry of the Georgia Bureau of Investigation ("GBI"). Special Agent Berry advised defendant of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694). Defendant acknowledged that he understood his rights and he then executed a "standard GBI acknowledgement of waiver of rights form [which acknowledged that defendant] understood his rights and that he was waiving his rights at that time and was willing to speak to [the law enforcement officers]." The waiver form more specifically provided that defendant was "willing to talk about *theft by receiving*." Defendant then answered "questions regarding items of [stolen property] found at his residence. . . ."

On December 17, 1984, Special Agents Connelly and Berry went to the Pickens County Jail, where defendant was then being held, and "attempted to reinterview . . ." defendant. However, defendant "did not wish to speak to [the agents] and [he] exercised his right to legal counsel." The interview was terminated.

On December 21, 1984, Fannin County "Deputy Webb" informed Agent William Daniel Duncan of the GBI that defendant "wanted to talk with a GBI agent." Agent Duncan went to the Fannin County Jail and "asked [defendant] what he wanted and [defendant] asked [the agent to get] him some personal items, tobacco and clothes and this type of thing." Agent Duncan informed defendant that either he "or some of the deputies would go [to defendant's residence, but that they would have] to have a consent, some type of consent signed, giving them permission to go on [defendant's] property and get it." Defendant executed such a consent. "[H]e was [then] locked back up."

On December 26, 1984, "Investigator [Donald B.] Payne [, Chief Investigator for the Fannin County Sheriff's Department] told [Agent Duncan] that [defendant] had told two or three deputies that he wanted to talk . . ." The next day, Agent Duncan went to the Fannin County Jail with another agent. Agent Duncan "told [defendant] that the deputies had told [the agents] that he wanted to talk. . . ." Defendant said "yes, [that] he wanted to talk . . . about the death of Mary Dunn. At that time[, Agent Duncan] advised [defendant] of his constitutional rights under [Miranda v. Arizona, supra,] of a waiver and [defendant] signed the waiver and [the agents] did interview [defendant] at that time." No one threatened, coerced or intimidated defendant into making the statement; defendant was not given the slightest hope of benefit or reward in exchange for the statement; defendant did not appear to be under the influence of drugs or alcohol at the time he waived his constitutional rights or during the interview and defendant seemed to "understand everything" before and during the interview.

a. Defendant argues that his first statement was the product of his being misled in the initial questioning in that he was told that he "was under suspicion for theft by receiving and signed a waiver so stating . . . No mention was made to [him] at that time that he was being suspected of burglary, theft by taking or possible murder charges." This argument is without merit.

"A suspect's awareness of all the crimes about which he may be questioned is not relevant to determining the validity of his decision to waive [his] Fifth Amendment privilege; accordingly, [Special Agents Connelly's and Berry's] failure to inform [defendant] of the subject matter of the interrogation could not affect his decision to waive that privilege in a constitutionally significant manner." *Colorado v. Spring*, 479 U. S. 564, 565 (107 SC 851, 93 LE2d 954).

b. Next, defendant argues that his first statement should have been suppressed because he invoked his right to counsel the day after he made the statement.

"The effect of this assertion by [defendant] of his right to counsel was to render inadmissible any statement *subsequently* given by him in violation thereof. *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). It did not, however, have the effect of rendering inadmissible any *previous* statement which [defendant] had already made pursuant to a valid waiver of his constitutional rights." *Stephens v. State*, 170 Ga. App. 342 (1), 343 (317 SE2d 627). Consequently, since evidence authorized a finding that defendant's first custodial statement was made after a knowing and voluntary waiver of his constitutional rights, the trial court did not err in allowing the statement into evidence.

c. Finally, defendant challenges the admissibility of his second custodial statement, arguing that it was made after he invoked his right to counsel.

"[A]n analysis of whether a suspect who has invoked his right to counsel under *Miranda* [*v. Arizona*, supra], has later waived that right proceeds in two steps. First, a determination as to whether the *defendant* initiated further talks with the police, and second, if so, whether his waiver was shown to be voluntary under the totality of the circumstances. *Oregon v. Bradshaw*, 462 U. S. 1039 (103 SC 2830, 77 LE2d 405). See also *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378)." *Sanders v. State*, 182 Ga. App. 581 (1), 582 (356 SE2d 537). In the case sub judice, the evidence authorized a finding that defendant initiated the second interview with Agent Duncan and that defendant freely and voluntarily waived his constitutional rights before the interview. The trial court did not err in allowing evidence of defendant's second custodial statement.

2. In his second enumeration, defendant contends the trial court erred in failing to grant his motion for change of venue.

" ' "The decision to grant a change of venue lies within the discretion of the trial court, and its discretion will not be disturbed absent an abuse of that discretion. *Allen v. State*, 235 Ga. 709, 713 (221 SE2d 405) (1975); *Jarrell v. State*, 234 Ga. 410, 415 (216 SE2d 258) (1975)." *Patterson v. State*, 239 Ga. 409, 418 (5) (238 SE2d 2) (1977).' *Chancey v. State*, 256 Ga. 415, 429 (5), 430 (349 SE2d 717). 'In order to prevail on a motion for change of venue, (1) the defendant must show such extensive and prejudicial pretrial publicity that the county in which the crime occurred *presumptively* is incapable of providing a fair trial to the defendant, or (2) he must establish from the jury selection process itself — the voir dire examination and qualification of prospective jurors — that a change of venue is necessary. *Devier v. State*, 253 Ga. 604, 608-609 (323 SE2d 150) (1984).' *Lee v. State*, 258

Ga. 82, 86 (9) (365 SE2d 99)." *Lubiano v. State*, 192 Ga. App. 272, 277 (5) (384 SE2d 410). In the case sub judice, defendant argues that "pretrial publicity and discussions" prevented him from receiving a fair trial.

" ' "On appeal, the impact of media publicity is evaluated by various factors, such as the size of the community and the extent of media coverage (number of articles and their circulation); whether it related to the discovery of the crime (e.g., facts regarding the victim) or to the apprehension or interrogation of the defendant (and whether any publicized confession was admitted at trial); the prominence and content of the reports (e.g., facts vs. speculation and emotionalism, and the accuracy and admission into evidence of those facts); and the time interval between the publicity and the trial. *Stroble v. California*, 343 U. S. 181, 191-195 (72 SC 599, 96 LE 872) (1952); *Mooney v. State*, [243 Ga. 373, 385-387 (254 SE2d 337)]; *Brooks v. State*, 244 Ga. 574, 578-581 (261 SE2d 379) (1979). . . ." *Kesler v. State*, 249 Ga. 462, 471-472 (7) (291 SE2d 497) (1982).' *Chancey v. State*, 256 Ga. 415, 429 (5), supra." *Lubiano v. State*, 192 Ga. App. 272, 277 (5), 278, supra.

In the case sub judice, defendant points to eight newspaper articles, reporting crimes which defendant was suspected of committing. There is no evidence of the size of the community affected, if any, by this pretrial publicity and there is no mention of publicized admissions or confessions by defendant. In fact, only four of the articles mention defendant by name and none of these reports speculates as to defendant's guilt or innocence. On the contrary, the articles reflect accurate reporting, unembellished by speculation or emotionalism. Under these circumstances, the trial court could not have abused its discretion in denying defendant's motion for change of venue.

3. Next, defendant contends the trial court erred in failing to give his fourth request to charge, i.e., "I charge you further that you may not infer an unauthorized entry from any recent possession by an accused of the stolen goods."

" ' "A request to charge should in itself be correct, and even perfect; otherwise the refusal to give it will not be cause for a new trial." (Cit.) . . .' *Kessel v. State*, 236 Ga. 373, 374 (2) (223 SE2d 811) (1976)." *Daniels v. State*, 184 Ga. App. 689 (1), 690 (362 SE2d 775). In the case sub judice, defendant's fourth request to charge was not accurate as "there is still validity to the long-established rule that proof of recent, unexplained possession of stolen goods by the defendant is sufficient to create an inference that the defendant is guilty of the burglary. . . ." *Bankston v. State*, 251 Ga. 730 (309 SE2d 369). Consequently, the trial court did not err in refusing defendant's fourth request to charge.

4. In his final enumeration, defendant challenges the sufficiency

of the evidence.

The evidence in the case sub judice showed that defendant was in possession of property which had recently been the object of five burglaries. Defendant was also in possession of building materials which had recently been taken from a local business establishment's construction site. The burglary victims and the theft victim were either acquainted with defendant or they owned property which was easily accessible to defendant's home. Further, defendant's explanation of possession of the stolen property was that his co-defendant forcibly coerced him to participate in the crimes. This evidence, evidence showing defendant's inconsistent statements regarding his participation in the crimes and evidence showing that defendant attempted to flee when confronted by warrant-bearing law enforcement officers was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of five counts of burglary and one count of theft by taking. *Jackson v. Virginia*, 443 U. .S. 307 (99 SC 2781, 61 LE2d 560). See *Rogers v. State*, 185 Ga. App. 211 (1) (363 SE2d 846), where it was held that evidence of recent possession of a stolen truck plus defendant's unbelievable explanation of his possession of the stolen property was sufficient to sustain a conviction for theft by taking.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur.*

DECIDED JULY 2, 1990.

*David E. Ralston*, for appellant.

*Roger G. Queen, District Attorney, Jeffrey L. Floyd, Assistant District Attorney*, for appellee.